LOWRY v. COWLES ELECTRIC SMELTING & ALUMINUM CO. et al.

(Circuit Court, N. D. Ohio, E. D. May 13, 1893.)

1. PATENTS FOR INVENTIONS—ASSIGNMENT—CONSTRUCTION.
    An agreement purporting to convey all discoveries and inventions of a certain character, owned by C. and B., and applications for patents pending therefor, may be construed to include inventions of the same character owned by, and applications for patents pending in the name of, B. alone, where C. and B. jointly own but one of such inventions, but C. is B.'s solicitor for procuring patents for the others.

2. SAME—EQUITY—PLEADING—BURDEN OF PROOF.
    On a bill to set aside an alleged assignment of a patent by defendant, as being a cloud on complainant's title,—he claiming under an assignment from the inventor,—the issue raised by the plea was that the patent belonged to defendant because it was included in an instrument executed while the application was pending, by which the inventor assigned to defendant all inventions and applications that did or might interfere with pending applications of defendant. Patents were afterwards granted upon said applications of both parties. Held, that the presumption from this result is that the applications did not interfere; and the burden is on de-

fendant, in order to sustain his plea, to show, from the patents, or their file wrappers, that there might have been such an interference.

**3. SAME—INTERFERENCE—ELECTRIC SMELTING.**

The patent claimed by complainant (No. 464,933, issued December 8, 1891, to Charles S. Bradley) was for a process of separating metals from their ores, in which fusion by external heat was dispensed with, and an electric current made to perform the double function of first fusing the ore, and then separating the metal by electrolysis. In accomplishing this process, two electrodes are thrust into the vessel containing the ore, and a current passed so as to form an arc between them. The heat of the arc fuses the ore, and then the current flows through this liquid conductor, and the desired electrolysis begins to take place. The patents issued to defendant (Nos. 319,795, 319,945, 324,659, and 335,058, granted to Alfred H. Cowles and others) were for a process of smelting ore by electricity, and means for accomplishing the same, wherein heat was distributed through the mass of ore by the current flowing through a granular conductor, of high resistance, such as electric light carbon, mixed with the mass, thus accomplishing the fusion of the ore, while the separation of the metal from its compounds was accomplished by the joint effect of the heat and the chemical action of some appropriate reagent mixed with the ore. These patents were all filed as exhibits with the plea. *Held,* that the facts, as presented, are not sufficient to show interference between the Bradley and Cowles patents, whatever might be developed by expert evidence under an answer, and the plea will be overruled.

In Equity. Suit by Grosvenor P. Lowry against the Cowles Electric Smelting & Aluminum Company and Alanson Osborn to set aside an assignment of a patent.

Statement by TAFT, Circuit Judge:

This cause came on for hearing on the second amended plea to the bill. The bill averred that the complainant, Grosvenor P. Lowry, was a citizen and resident of the state of New York, and that the Cowles Electric Smelting & Aluminum Company was a corporation under the laws of the state of Ohio, and that Osborn, the codefendant, was also a citizen of Ohio, both residing in the northern district of this state. The bill alleged that Charles S. Bradley was the first and true inventor of certain new and useful improvements in electric metallurgical processes; that upon the 23d day of February, 1883, he filed his application in the patent office, and that such proceedings were had that on the 8th day of December, 1891, there was issued to him, upon a division of said application, patent No. 464,933, for the process of obtaining metals from their ores or compounds by electrolysis, and also another patent, upon the main division of his application, numbered 168,148 for the process of separating aluminum from its compounds; that in February, 1892, said Charles S. Bradley duly assigned these patents to the complainant; that the assignments are duly recorded in the records in the patent office.

The bill further averred that prior to March 14, 1885, Francis B. Crocker and Charles S. Bradley were inventors of certain improvements relating to electric smelting processes and furnaces, and that at that date they filed an application for a patent, numbered 158,805, and that while the application was pending an interference was found to exist, by the commissioner of patents, between it and the application previously filed by Eugene H. Cowles and Alfred H. Cowles, associated as the Cowles Electric Smelting & Aluminum Company; that thereupon negotiations were entered into by the defendant the Cowles Electric Smelting & Aluminum Company and said Crocker and Bradley for the purchase of their said invention, which resulted in the execution of an agreement dated May 18, 1885, by which said Crocker and Bradley sold the Cowles Company the invention disclosed and covered by their application; that this agreement was recorded in the United States patent office June 2, 1885; that thereafter letters patent were issued, No. 335,499, to said Crocker and Bradley, as assignors of said Cowles Company, for the process of heating and reducing ores by electricity.

The bill then charged that the defendant the Cowles Company, for the pur-

pose of depriving the complainant of the full enjoyment of the patents Nos. 464,933 and 468,148, transferred to him by Bradley as aforesaid, pretended to execute an instrument in writing transferring these patents to defendant Osborn, and containing a recital that the Cowles Company had become the owner of said patents by virtue of the agreement between the Cowles Company and Crocker and Bradley of May 18, 1885; that the conveyance to Osborn was in trust to be reconveyed to the company, or to such parties as the company should designate, on demand. The bill charged that this assignment was a fraudulent instrument, that no consideration was paid for it, and that the sole object was to create a cloud upon the complainant's title. Then followed this averment: "That while the language in said agreement between said Crocker and Bradley and said the Cowles Electric Smelting & Aluminum Company is broad enough in its terms to cover other inventions of said Crocker and Bradley than that embraced in said application No. 158,805, it was not intended to, and did not in fact, embrace any other inventions; that the occasion of making said contract was the existence of said interference between said application and the application of said Eugene H. and Alfred H. Cowles; that said Crocker and Bradley never made any invention, or filed any application, which interfered with any application of the said Eugene H. and Alfred H. Cowles, except the one last aforesaid; that the application of said Charles S. Bradley, No. 85,957, upon which said patents 464,933 and 468,148 were issued, was never in interference with any application of said Eugene H. and Alfred H. Cowles, and was not, by any act, understanding, or contract of the parties, included in said agreement of May 18, 1885, all of which was well known to said defendants at the time when they executed, and placed upon the record of the patent office the said false and fraudulent instrument of writing aforesaid."

The bill further averred that the two patents belonging to the complainant were of the value of $5,000 and upwards; that the invention they disclosed was an important step in the art of reducing aluminum from its ores, in which act there was a recent and extended activity; that the existence upon the record of the patent office of the said false and fraudulent pretended assignment of said patents operated as a cloud upon complainant's title, and greatly impaired the value of the patents in his hands, and made them wholly unsalable by him. Wherefore he prayed that the assignment of the two patents by the Cowles Company to Osborn be set aside, declared fraudulent, null, and void, and that the defendants be required by the court to enter upon the record of the patent office a cancellation of the same.

The defendants, the Cowles Company and Osborn, filed a joint and several plea, and fortified the same by an answer denying fraud or conspiracy or combination. An amended plea was subsequently filed, and then a second amended plea, which presented the question for hearing. The plea averred that prior to and on April 8, 1885, the defendant the Cowles Company, being then engaged in the business of reducing ores by electricity, by means of electric smelting processes or furnaces, and having then pending in the patent office applications for certain letters patent made and filed for Eugene H. and Alfred H. Cowles, was informed that Charles S. Bradley had made certain improvements relating to electric furnaces, and the reduction of ores by electricity; that Francis B. Crocker was his solicitor or attorney for the purpose of procuring patents for the said invention; that accordingly the Cowles Company, by its agent, Colgate Hoyt, purchased and obtained an option for the purchase of the said inventions, of which a copy was filed as an exhibit with the plea. This was as follows:

"New York, April 8, 1885.

"By and between Charles S. Bradley and Colgate Hoyt, both of Yonkers, in the state of New York, it is agreed as follows: Said Bradley shall, upon demand of said Hoyt, made at any time within 90 days from the date hereof, assign to said Hoyt, or his order, for the consideration of ten thousand dollars cash, an undivided ¼ interest in all inventions which he had hitherto made in electric furnaces, and in the reduction of ores by electricity, and of all patents to be granted therefor, whether applications for such patents have already been filed, or shall hereafter be filed, in the patent office of the United States; and, in consideration of the option being granted, said Hoyt,

or the party to whom he may have assigned the same, shall pay to said Bradley, at the date hereof, the sum of five hundred dollars.

"Charles S. Bradley.
"New York, April 8, 1885.

"Received of Colgate Hoyt five hundred dollars.      C. S. Bradley."

The plea further averred that afterwards, **on May 8, 1885,** the Cowles Company, believing that the price named in the option was too large, but still being desirous of preventing any interference with its business, and having no definite knowledge of the exact inventions of said Bradley, but being informed that said Crocker was connected therewith, either as attorney, part owner, or otherwise, but not knowing the exact capacity, and with no knowledge of the number or character of their applications for patents, obtained from Bradley and Crocker, by a certain assignment in writing, all their interests, joint and several, in all their discoveries and inventions relating to said electric processes and furnaces. The agreement was as follows:

"This agreement entered into this 8th day of May, 1885, between F. B. Crocker, of New York city, N. Y., and C. S. Bradley, of Yonkers, N. Y., constituting the first party, and the Cowles Electric Smelting and Aluminum Company, of Cleveland, Ohio, a corporation organized under the laws of the state of Ohio, constituting the second party, witnesseth, that, whereas, the first party have made certain discoveries and inventions relating to electric smelting processes and furnaces, and have made some applications for patents therefor in the United States patent office, and, whereas, said party is desirous of becoming the owner of all such discoveries and inventions, it is therefore agreed between the parties as follows: I. For the consideration hereinafter mentioned, the receipt of which, to our full satisfaction, is hereby acknowledged, the said party does hereby sell, assign, and set over to the said second party all interest in any and all discoveries and inventions relating to electric smelting processes and furnaces, and all patents they have obtained therefor, and all applications now pending, and caveats on file, in the United States patent office relating to electric smelting processes and furnaces, which do or may interfere with any applications for patents made by Eugene H. and Alfred H. Cowles, of Cleveland, Ohio, now pending in the United States patent office. It is understood and agreed between the parties that this clause also includes the application of the first party, now pending in the United States patent office, and designated serial number 158.805, and filed March 14th, 1885. II. Said first party also sells, assigns, and sets over to said second party their entire interest in all inventions, patents and applications for patents, in all foreign countries, for the discoveries and inventions mentioned in the preceding clause of this agreement. III. Said first party hereby authorizes and requests the commissioner of patents to issue to the said second party patents for said discoveries and inventions mentioned in the first clause of this agreement. IV. Said first party, for said consideration, further agrees to sign and execute all papers necessary to perfecting applications for said inventions, and obtaining patents therefor. V. In consideration of the preceding, said second party hereby pays in hand to said first party the sum of five thousand dollars. In testimony whereof, said parties have hereunto set their hands the day and year first above written.

"Francis B. Crocker.
"Charles S. Bradley."

The plea averred that it was the intention of both and all the parties to the instrument of writing to assign to the party of the second part therein the said separate application of Bradley, filed February 23. 1883, on a division of which application the patents Nos. 464,933 and 468,148 were issued, as alleged in the bill; that at the time of the execution of the assignment of May 18, 1885, there was no other joint application for any patent pending in the patent office, other than that specifically referred to in the assignment, and that the general terms of the assignment were intended to relate to, and did in fact relate to, the said separate application of Bradley. The defendants further averred that this separate application for a patent for an invention related to electric smelting processes and furnaces, and was one that did or might interfere with the applications of Alfred H. and Eugene

H. Cowles, then pending in the patent office, and to show this reference was made to three patents issued to Eugene H. and Alfred H. Cowles; to one patent issued to Eugene H. Cowles, Charles F. Maybury, and. Alfred H. Cowles; to another patent issued to Alfred H. Cowles alone; to the two patents in suit; to their patent-office file wrappers and contents; and to the patent issued to Bradley and Crocker,—all of which were filed as exhibits with the plea. Wherefore, the defendants averred that the Cowles Company was the lawful owner of the patent set up in the bill, by virtue of the assignment of May 18, 1885, and that its assignment of them to Osborn was a true and valid instrument; that the assignment was on file in the patent office; and that the complainant had notice thereof before any transfer to him of the letters patent referred to in the bill.

Robert S. Taylor, for complainant.

Frederick Betts and M. D. & L. L. Leggett, for respondents.

TAFT, Circuit Judge, (after stating the facts.) The issue which the plea tenders is that by the agreement of May 18, 1885, Bradley, before his assignment to complainant, conveyed to the Cowles Company the patents claimed by the complainant. Whether the plea is good, or not, depends upon the construction of the agreement of May 18, 1885, in the light of the facts averred in the plea. The first objection made to the claim of the defendants in the plea is that the agreement is between Crocker and Bradley, and purports to convey discoveries, inventions, applications, etc., which they jointly own, whereas the application, whereon the patents set up in the bill were issued, was an application in the name of Bradley alone, and the patent was issued to Bradley alone. It is quite clear, under the authorities cited by complainant, that, if the surrounding circumstances call for such a construction of the assignment as will include in the transfer patents held by Bradley alone, the language of the contract may be so construed. Co. Litt. 197a; Justice Windham's Case, 5 Coke, 7b; Wharton v. Fisher, 2 Serg. & R. 182; Williams v. Hadley, 21 Kan. 350; Judd v. Gibbs, 3 Gray, 539; Von Wettberg v. Carson, 44 Conn. 289; Coffin v. Douglass, 61 Tex. 406; Shoe Co. v. Ferrell, 68 Tex. 638, 5 S. W. Rep. 490; Bank v. Beede, 37 Minn. 527, 35 N. W. Rep. 435. If, as alleged in the plea, there was only one patent application then on file in the name of Crocker and Bradley, the use of the plural would indicate that the assignment was intended to carry other patents; and, as other patents were in the name of Bradley alone, it would be a reasonable inference that the assignment was intended to carry Bradley's patent, also.

Before the plea can be sustained, however, it must also appear that the patents claimed by complainant are for discoveries in electric smelting processes and furnaces, which did or might interfere with any applications for patents made by Eugene H. and Alfred H. Cowles, of Cleveland, Ohio, pending in the patent office at the date of the assignment, May 18, 1885. The plea makes all these patents, by reference, a part of it. It is averred in the bill that no invention of Bradley and Crocker, or of Bradley alone, except the one mentioned in the assignment itself, did interfere with any of the patents issued on the applications of the Cowles brothers, then pending in the patent office. The Cowles brothers

got their patents, and Bradley got his. The prima facie presumption from this result is that the Bradley patent could not interfere with the applications for the Cowles patent, and in order to make their plea good the burden is on the defendants to show, from the patents, or their file wrappers and contents, that there might have been such an interference. Bradley says of his invention, in his specifications:

"My invention relates to a process of effecting, by an electric current, the separation or disruption of aluminum from its ores or compounds, or the disruption, in a similar manner, of other like highly refractory metallic compounds, of which aluminum may be considered a type, and which have been classed together by reason of the great difficulty in their reduction."

He then says that previous to the invention the process had been carried on by subjecting the fused ore to the action of the current in a crucible, placed in the heating furnace, but that this external heat had interfered much with the usefulness of the process, by injuring the crucible. He then says:

"The main object of my invention, therefore, is to dispense with the external application of heat to the ore in order to keep it fused. In order to accomplish this object I employ an electric current of greater strength or intensity than what would be required to produce the electrolytic decomposition alone, and I maintain the ore or other substance in a state of fusion by the heat developed by the passage of the current through the melted mass, so that by my invention the electric current is employed to perform two distinct functions; one of these being to keep the ore melted by having a portion of its electrical energy converted into heat by the electrical resistance offered by the fused ore, and the other being to effect the desired electrolytic decomposition, by which means the heat, being produced in the ore itself, is concentrated at exactly the point where it is required to keep the ore in a state of fusion."

Again, in his specifications, he says:

"In order to fuse the mass at the start, I take two electrodes of a suitable material, such as already used in like processes where fusion has been effected by an external heat, and connected, respectively, to the two poles of a dynamo-electric machine, or other source of current, bring the said electrodes into contact, separate them sufficiently to form an electric arc, and then thrust them into the bottom of the cavity or basin, where the ore soon fuses by the heat of the arc, and becomes a conducting electrolyte, through which the current from the electrodes continues to flow. The arc, of course, ceases to exist as soon as there is a conducting liquid—the fused ore—between the electrodes, and the passage of the current then takes place through the fused ore by conduction, and the heat is produced as it is in an incandescent lamp. The arc is merely used to melt the ore in the beginning, and the ore is kept melted by incandescence, so to speak; the metallic aluminum being gradually deposited at the cathode, and the fluorine gas set free at the anode, so long as the ore is maintained in a state of fusion."

Bradley's other patent is for the plan of effecting fusion and electrolysis in a heap of ore without the use of any crucible, by making a cavity in the ore itself, and fusing the ore progressively from the center outwardly; but, as that is not important here, we may give it no further attention.

All the Cowles patents are for processes for smelting ores by electrical currents. Patent No. 319,795 was the first of the patents referred to in the plea. The patentee says:

"The present invention relates to the class of smelting furnaces which employ an electric current solely as a source of heat. Heretofore it has been

attempted to reduce ores, and perform metallurgical operations, by means of an electric arc; the material to be treated being brought within the field of the arc, or passed or fed through it."

The difficulties in that operation are then described. The patentee proceeds:

"The object of my invention is to provide a process by which electricity can be practically employed for metallurgical operations, and for this purpose to secure a distribution of the intense heat which it is well known electricity is capable of generating over a large area, or through a large mass, in such a manner that a high temperature can be sustained for a long time, and controlled. To this end the invention consists, essentially, in the use for metallurgical purposes of a body of granular material of high resistance, or low conductivity, interposed within the circuit in such manner as to form a continuous and unbroken part of the same, which granular body, by reason of its resistance, is made incandescent, and generates all the heat required. The ore or light material to be reduced—as, for example, the hydrated oxide of aluminum, alum, chloride of sodium, oxide of calcium, or sulphate of strontium—is usually mixed with the body of granular resistance material, and is thus brought directly in contact with the heat at the point of generation. At the same time the heat is distributed through the mass of granular material, being generated by the resistance of all the granules, and is not localized at one point, or along a single line. The material best adapted for this purpose is electric light carbon, as it possesses the necessary amount of electrical resistance, and is capable of enduring any known degree of heat, when protected from oxygen, without disintegrating or fusing."

The patentees then describe the art of reducing zinc, which is by distilling the zinc, and condensing the zinc fumes in the condensing chamber:

"In the reduction of an ore composed of a nonvolatile metal, or a metal which is not volatilized at the heat generated in the furnace, the metal remains in the furnace, mixed with the carbon filling the interstices between the grains, while the gases produced pass off."

The claims of the patent are for the method of reducing ores by subjecting the ore, in the presence of a reducing agent, to the action of heat generated by passing an electric current through the body of broken or pulverized resistance metal that forms a continuous part of the electric current; the ore being in contact with the broken or pulverized resistance material, whereby the ore is reduced by the combined action of the resisting agent, and of the heat generated solely by the resistance of the broken or pulverized body through its mass.

Patent 319,945 is for apparatus by which this is to be accomplished. Patent 324,659, to Cowles, Maybury & Cowles, is for an improvement on the foregoing processes, to overcome a difficulty in their practical operation caused by the tendency of the aluminum to take up, chemically and mechanically, a considerable amount of the granulated carbon. The improvement suggested consists in reducing the ore of aluminum, in connection with some other metal which will alloy with the aluminum, and then subsequently separating the alloy metal from the aluminum by amalgamation or equivalent process. The alloying process prevents the taking up of carbon. Patent 324,659 is a mere improvement on the original process mentioned in 319,795, for the production of the alloys, bronzes, and

metallic compounds.    Patent 335,058 to Alfred H. Cowles, for an improvement in an electric furnace, and the method of operating the same, is for the same device, substantially, (with changes and improvements immaterial here,) as that described in the original Cowles patent.

Such examination of the specifications as I have been able to give, with my limited knowledge of the subject, does not satisfy me that the Cowles patents and the Bradley patent did or might interfere.    The Bradley patent was for a process of electrolysis in which the heat necessary to fuse the refractory ores into the liquid state required for electrolysis was produced by the resistance to the current in the fused electrolyte.    The current is carried, and is intended to be carried, by the fused ore.    The Cowles patents are not intended to disrupt aluminum compounds by electrolysis.    They are intended to produce an intense heat, and apply it to such compounds in the presence of a reagent, and by the joint effect of the heat and the chemical action of the reagent to separate the compound and its elements, just as iron and other ores are smelted in a furnace.    The gist of the Cowles invention is the use of the granular carbon distributed through the mass of granulated ore to carry the current from one electrode to another, and by its low conductivity and resistance to produce intense heat, not at a single point, or in a single line, but throughout the ore, and to maintain it constant.    It was not the purpose of the Cowles brothers to carry the current with the ore, but with the carbon.    Previously the current had been carried by the air, making an arc.    The Cowles brothers substituted, for the air, carbon.    But it is said the ore necessarily carried the current in the Cowles process, and that electrolysis therefore was also present; that this was not known at the time the patents were taken out, and that this was not, therefore, claimed, but that the Cowles brothers might have claimed it in their patents; and that, therefore, the Bradley patent and the Cowles patents covered the same ground, and might have interfered.    Whether the Cowles patents necessarily involved electrolysis is a matter of scientific fact, and a fact which could not very well be averred in a plea.    The construction of patents, and a determination whether they interfere, is a mixed question of law and fact, depending upon the construction of specifications and claims and the scientific or other facts which determine the meanings of those claims, and their effect. I do not now hold that the Bradley patent may not be shown by expert evidence to cover such ground that it did or might have interfered with the Cowles patents, but I do not now find any facts averred in the plea, or apparent to me, without scientific knowledge, from the record, that justify me in saying so.    The defenses should be made by answer, and then, upon the evidence to be taken, the question can be determined as in an ordinary patent suit.    Pleas should properly tender a definite issue, and while the issue here is definite and single, namely that the assignment of May 8, 1885, covered the Bradley patent, it is hardly possible to make an averment with reference to the interference of the Bradley and Cowles

patents which will not be an averment both of law and of fact. Such averments make bad pleas. The plea will be overruled, with leave to the defendants to answer.