## MOTOR IMPROVEMENTS, Inc., v. A. C. SPARK PLUG CO.
### No. 484.

District Court, E. D. Michigan, Northern Division.

Jan. 23, 1934.

Clark & Henry, of Bay City, Mich., and Kenyon & Kenyon, of New York City, for plaintiff.

Prewitt Semmes, of Detroit, Mich., and Zane, Morse, Zimmerman & Norman, of Chicago, Ill., for defendant.

TUTTLE, District Judge.

This cause is now before the court on a motion to dismiss the bill of complaint, on the ground that the facts alleged in such bill are insufficient to constitute a valid cause of action in equity. The bill of complaint was filed by Motor Improvements, Inc., a Delaware corporation, against A. C. Spark Plug Company, a Michigan corporation, and avers, as a basis for the jurisdiction of this court, the existence of the requisite diversity of citizenship and the statutory amount of the matter in controversy.

The bill alleges that the plaintiff, as exclusive licensee under certain patents on oil filters for automobiles, obtained a permanent injunction in this court against the present defendant restraining it from infringing such patents. The bill then proceeds with allega-tions the gist and substance of which are sufficiently indicated by the following quotations therefrom:

"By reason of their internal construction in accordance with the Sweetland inventions of said Letters Patent, the oil filters manufactured and sold by plaintiff and those manufactured and sold by defendant prior to the service of said injunction on November 14th, 1931, were and are effective to maintain the crank case oil so free from impurities as to be in safe condition for operation of the automobile, and the said oil filters were and are capable of effectively filtering the said oil for eight to ten thousand miles of normal operation of the automobile. The said oil filters were of generally similar outward appearance, being cylindrical cans, colored black and bearing on their respective labels the words 'Oil Filter' and on the plaintiff's label the word 'Purolator' and on the defendant's label the letters 'A. C'. Prior to November 14th, 1931, upward of seven millions of such oil filters were manufactured and sold by the plaintiff and upward of eight millions of the infringing A C oil filters were manufactured and sold by the defendant. By reason thereof the trade and automobile owners and users generally have come to associate the words 'Oil Filter' and the outward appearance of such devices and the use therewith of the word 'Purolator' or the letters 'A C', with effective oil filteration capable of maintaining the crank case oil in safe condition for operation of the automobile and having an effective life under normal operating conditions of from eight to ten thousand miles. The parties thereby acquired and enjoyed a business and reputation and good will of great value by reason of the effectiveness and the deserved reputation for effectiveness of their respective devices embodying the said Sweetland inventions. The good will and trade thus acquired by the defendant was wrongfully acquired through infringement of the plaintiff's patents as adjudicated in the patent litigation above referred to and should have been and was in equity the rightful trade and good will of the plaintiff by reason of its exclusive rights under the said patents. The plaintiff alleges that by reason of the premises it is entitled to all of the business and trade and good will thus wrongfully acquired by the defendant as a result of its infringement, and that the defendant in violation and defiance of the plaintiff's rights and intending to deprive the plaintiff of the benefits in trade and business to which the plaintiff is exclusively entitled, has continued since the date of serv-

ice of such injunction, to-wit, since November 14th, 1931, to trade on the said reputation and good will to which the plaintiff is exclusively entitled by selling spurious and ineffective imitation devices as and for oil filters of the type, construction and mode of operation of the previous infringing A C oil filter and by palming the same off on the public by means of false representations as to their quality and effectiveness, all to the great damage of the plaintiff in loss of sales of its own filters and reputation of the Sweetland type filter and to the great and wrongful profit of the defendant. * * * Plaintiff alleges that the use of the Sweetland inventions of said Letters Patent in the internal construction of oil filters makes possible the economical manufacture of devices having the filtering efficiency and long life of the plaintiff's filter and that without the use of such inventions no effective oil filter has been or is available on the market within the price range of the plaintiff's Sweetland oil filter and the defendant's earlier infringing A C oil filter. * * * Being as aforesaid the sole owner of the exclusive rights under the said Sweetland patents and of all good will and business appurtenant to oil filters of that type the plaintiff is and has been at all times mentioned in this complaint entitled to all oil filter business based upon the good will and reputation of the plaintiff's oil filter and of the defendant's infringing A C oil filter and is entitled to exclude all others from sales of oil filters based upon such reputation and good will. * * * Since it was served with the injunction in said patent proceeding on November 14, 1931, the defendant A. C. Spark Plug Company herein has engaged and is now engaged in the manufacture and sale of a device which it calls a filter and which it claims is not an infringement of the said two patents. The new device manufactured and sold by the said defendant consists of a can in all external respects, shape, coloring and appearance, identical with the can of the infringing filter, inside of which can is an alleged filtering element. * * * The so-called filtering element does not act to any substantial extent as a filtering element. Inasmuch as the can in which the alleged filtering element is contained is sealed, a purchaser of one of said new devices has no means of knowing what is inside of the can without breaking the same open and destroying the device. The only external difference between said new device and the infringing filter which the defendant is enjoined from making is that the new device is marked with a new model number. In its instructions to distributors, the defendant emphasizes the fact that the new device is exactly the same in outward appearance and that it is perfectly interchangeable with filters at present in the field (including plaintiff's). * * * That the defendant * * * is deceiving and is threatening to further deceive the public into purchasing the said devices on the said reputation and good will to which the plaintiff is so entitled by misrepresenting to the public that the said devices are oil filters capable of effective operation during eight to ten thousand miles of normal operation of the automobile, that the said devices are the same or substantially the same in construction and operation as the earlier infringing A C oil filter, that the said devices are equal in effectiveness to the prior infringing A C oil filters. * * * Except for the competition of the defendant through this new device, the plaintiff would be the seller through its distributing channels of filters in replacement of used infringing A C oil filters as well as of its own used filters. * * * In making the sales of the new device manufactured by it, as hereinabove set forth, the defendant has at all times and still does make the following false representations, to wit:—

"(a) That the new device is an effective oil filter, whereas in truth and in fact, it does not act as a filter; such filtering, if any, as it may do, being unsubstantial.

"(b) That by virtue of the identical external appearance of the new device and substantially identical marking thereof, as compared with the earlier infringing A C Filter, the defendant represents that its new device is substantially identical in construction and operation and effectiveness therewith, whereas, in fact and in truth, the new device is entirely different in construction and operation from the earlier infringing A C oil filter and is not to any substantial extent an oil filter.

"(c) That the new device is fully interchangeable with the earlier infringing A C oil filter and with the plaintiff's filters, thereby representing that the new device functions in the same way and is equal to the earlier infringing A C oil filter and to the plaintiff's filters in operation and effectiveness, whereas, in truth and in fact, it functions in a different manner and is not equal in operation and effectiveness but is ineffective.

"(d) That the new device is more efficient and much better than the old oil filter which the defendant has been enjoined from making, whereas, in fact and in truth, the new device is ineffective in comparison with the

plaintiff's filter or with the former infringing A C oil filter. * * * By means of said misrepresentations and deceit the defendant has confused the purchasing public and has put an instrument in the hands of the trade for palming off the defendant's spurious devices as and for genuine oil filters of the type of the earlier A C oil filter and of the plaintiff's filter, to all of which business and trade the plaintiff is exclusively entitled as aforesaid, and the defendant has thereby in fact diverted to itself great numbers of sales to which the plaintiff was exclusively entitled. * * * Also, if an inferior product, thus sold on the representation that it is a good product and like the plaintiff's product in operation, is subsequently discovered to be of little value, the injury to the business of all persons making that kind of a product, including the plaintiff, is much greater. Wherefore, the plaintiff alleges that the said inferior device which the defendant is now manufacturing and selling as if it were a superior filter is having and will continue to have the result of causing serious injury and damage to the filter business and special injury and damage to the business of the plaintiff."

The bill prays that the defendant be restrained "from selling, offering for sale or advertising the purported A C oil filter herein complained of, * * * from selling, offering for sale or advertising any device purporting to be an oil filter for automobiles unless such device be of such form and appearance as to clearly distinguish it from oil filters of the form and appearance of the earlier infringing A C oil filter and of the purported A C oil filter herein complained of and of the plaintiff's filter and particularly from selling, offering, or advertising for sale such devices embodying a container can colored black or marked with the letters 'A C' or any simulation of such coloring or marking, * * * from making any representation in connection with the sale or advertisement for sale of oil filters or purported oil filters calculated or tending to associate or identify the said device with the earlier infringing A C filter or with the purported A C oil filter herein complained of or with the plaintiff's filter, * * * from continuing the misrepresentations or any of them herein complained of, or making any similar or other misrepresentations as to the character, construction, operation, effectiveness, normal duration of effectiveness, or otherwise, of any oil filter or purported oil filter sold by it; and from selling, offering or advertising such devices for sale in any manner or form or containing any marking such as has been connected or associated with the selling, offering or advertising for sale of the earlier infringing A C oil filter, or of the purported oil filter herein complained of."

After full oral arguments, counsel for the parties have submitted able and exhaustive briefs, to all of which arguments and briefs I have devoted much thought and study. Numerous cases have been cited and discussed by counsel, and to all of them I have given careful consideration. As a result, I cannot avoid the conclusion that the plaintiff has not stated any equitable cause of action as a basis for any of the relief here sought.

When the claims and arguments of the plaintiff are closely examined and carefully considered, it seems apparent that they are all based, in substance and in the final analysis, upon the broad, underlying contention that the alleged acts and statements of the defendant complained of amount to false representations, either express or implied, to the public that the oil filters now made and sold by the defendant are, in quality and efficiency, equal or superior to those now made and sold by the plaintiff, that thereby the public is induced to buy the defendant's filters instead of the plaintiff's, and that this conduct of the defendant constitutes unfair competition which the plaintiff is entitled to have enjoined, even in the absence of any passing off by the defendant of its goods as being those of the plaintiff. This same contention was urged by the plaintiff in the case of American Washboard Co. v. Saginaw Manufacturing Co., 103 F. 281, 283, 50 L. R. A. 609, in which the Circuit Court of Appeals for the Sixth Circuit, then composed of Circuit Judges Taft, Lurton, and Day (all afterwards members of the Supreme Court), clearly and positively rejected such contention, using in the course of their opinion the following language, equally applicable here:

"The question presented is, is the case thus stated one which entitles complainant to a remedy by injunction and accounting against the defendants? There are numerous cases in the reports upon the subject of unfair competition in trade. From the general principle running through them all it may be said that when one has established a trade or business in which he has used a particular device, symbol, or name so that it has become known in trade as a designation of such person's goods, equity will protect him in the use thereof. Such person has a right to complain when another adopts this symbol or manner

of marking his goods so as to mislead the public into purchasing the same as and for the goods of complainant. * * * Applying this doctrine to the allegations of complainant's bill, we do not find it anywhere averred that the defendant, by means of its imitation of complainant's trade-mark, is palming off its goods on the public as and for the goods of complainant. The bill is not predicated upon that theory. It undertakes to make a case, not because the defendant is selling its goods as and for the goods of complainant, but because it is the manufacturer of a genuine aluminum board, and the defendant is deceiving the public by selling to it a board not made of aluminum, although falsely branded as such, being in fact a board made of zinc material; that is to say, the theory of the case seems to be that complainant, manufacturing a genuine aluminum board, has a right to enjoin others from branding any board 'Aluminum' not so in fact, although there is no attempt on the part of such wrongdoer to impose upon the public the belief that the goods thus manufactured are the goods of complainant. We are not referred to any case going to the length required to support such a bill. It loses sight of the thoroughly established principle that the private right of action in such cases is not based upon fraud or imposition upon the public, but is maintained solely for the protection of the property rights of complainant. It is true that in these cases it is an important factor that the public are deceived, but it is only where this deception induces the public to buy the goods as those of complainant that a private right of action arises. * * * If the doctrine contended for by complainant in this case was to be carried to its legitimate results, we should, as suggested by Mr. Justice Bradley in the case of New York & R. Cement Co. v. Coplay Cement Co. (C. C.) 44 F. 277, open a Pandora's box of litigation. A person who undertook to manufacture a genuine article could suppress the business of all untruthful dealers, although they were in no wise undertaking to pirate his trade. Says Mr. Justice Bradley:

" 'The principle for which counsel for complainant contends would enable any crockery merchant of Dresden or elsewhere interested in the particular trade to sue a dealer of New York or Philadelphia who should sell an article as Dresden china, when it is not Dresden china. * * * A dry-goods merchant selling an article of linen as Irish linen could be sued by all the haberdashers of Ireland and all the linen dealers of the United States.'

"Take the metal which is the subject-matter of the controversy in this case. Many articles are now being put upon the market under the name of aluminum, because of the attractive qualities of that metal, which are not made of pure aluminum, yet they answer the purpose for which they are made and are useful. Can it be that the courts have the power to suppress such trade at the instance of others starting in the same business who use only pure aluminum? There is a wide-spread suspicion that many articles sold as being manufactured of wool are not entirely made of that material. Can it be that a dealer who should make such articles only of pure wool could invoke the equitable jurisdiction of the courts to suppress the trade and business of all persons whose goods may deceive the public? We find no such authority in the books, and are clear in the opinion that, if the doctrine is to be thus extended, and all persons compelled to deal solely in goods which are exactly what they are represented to be, the remedy must come from the legislature, and not from the courts. * * * We are of opinion that complainant's bill lacks the essential allegations necessary to make the case entitling it to the relief sought, and we are of opinion that the demurrer to the bill was properly sustained."

I am unable to distinguish the case just cited from the present case. The decision of the Circuit Court of Appeals there has never been overruled or modified by that court; nor is that decision in conflict with any decision of the Supreme Court. It necessarily follows that the rule so adopted and announced is, at the present time, binding upon this court and is decisive of this case.

It is true that the Circuit Court of Appeals for the Second Circuit, in Ely-Norris Safe Co. v. Mosler Safe Co., 7 F.(2d) 603, 604, a case which was thought by it to involve the same question as that here presented, after saying, "We must concede, therefore, that on the cases as they stand the law is with the defendant, and the especially high authority of the court which decided American Washboard Co. v. Saginaw Mfg. Co., supra, makes us hesitate to differ from their conclusion," then did proceed to differ from that conclusion and to hold that, "if a tradesman falsely foists on a customer a substitute for what the plaintiff alone can supply, it can scarcely be that the plaintiff is without remedy, if he can show that the customer would certainly have come to him, had the truth been told." The Supreme Court, after granting certiorari to review that decision (273 U. S. 132, 47 S. Ct.

314, 71 L. Ed. 578), "in view of the conflict between the Circuit Courts of Appeals," then reached the conclusion that, "upon a closer scrutiny of the bill than seems to have been invited before, it does not present that broad and interesting issue" on which those Circuit Courts of Appeal had so differed, for the reason that, "if * * * the representation was false * * * there is nothing to show that customers had they known the facts would have gone to the plaintiff rather than to other competitors in the market, or to lay a foundation for the claim for a loss of sales"; and, therefore, it reversed the decree of the Circuit Court of Appeals for the Second Circuit, which had in turn reversed that of the District Court. This, of course, left the decision in American Washboard Co. v. Saginaw Mfg. Co., supra, still standing in full force and effect as controlling authority on this question, so far as this court is concerned.

Plaintiff, in support of its contention, cites decisions in various cases arising under the Federal Trade Commission Act (title 15, §§ 41–51, United States Code [15 USCA §§ 41–51]). Those cases, however, involved statutory provisions, and questions and considerations of public interest, not involved here, where only the rights of private litigants, under the common law, are concerned. As was pointed out by the Supreme Court in the case of Federal Trade Commission v. Klesner, 280 U. S. 19, 27, 50 S. Ct. 1, 3, 74 L. Ed. 138, 68 A. L. R. 838:

"While the Federal Trade Commission exercises under section 5 [15 USCA § 45] the functions of both prosecutor and judge, the scope of its authority is strictly limited. A complaint may be filed only 'if it shall appear to the Commission that a proceeding by it in respect thereof would be to the interest of the public.' This requirement is not satisfied by proof that there has been misapprehension and confusion on the part of purchasers, or even that they have been deceived—the evidence commonly adduced by the plaintiff in 'passing off' cases in order to establish the alleged private wrong. It is true that in suits by private traders to enjoin unfair competition by 'passing off,' proof that the public is deceived is an essential element of the cause of action. This proof is necessary only because otherwise the plaintiff has not suffered an injury. There, protection of the public is an incident of the enforcement of a private right. But to justify the Commission in filing a complaint under section 5, the purpose must be protection of the public. The protection thereby afforded to private persons is the incident. Public interest may exist although the practice deemed unfair does not violate any private right. * * * In Federal Trade Commission v. Winsted Hosiery Co., 258 U. S. 483, 42 S. Ct. 384, 66 L. Ed. 729, an unfair practice was suppressed * * * although the method employed did not involve invasion of the private right of any trader competed against."

In the case of Federal Trade Commission v. Winsted Hosiery Co., 258 U. S. 483, 42 S. Ct. 384, 66 L. Ed. 729, mentioned in the excerpt of opinion just quoted, the method of competition suppressed consisted of the misbranding, as wool, of goods not made wholly from wool, to the injury of the public and of competing traders, but did not involve any passing off of goods as being those of a competitor. The reference, therefore, in the quoted opinion of the Supreme Court in the Klesner Case, to the method so suppressed in the Winsted Hosiery Company Case, as one which "did not involve invasion of the private right of any trader competed against," seems to have peculiarly significant pertinency to the present case.

I do not overlook the references, in the bill of complaint and briefs of the plaintiff, to the alleged similarity, in color, markings, and appearance, between the defendant's present filters and its former infringing filters, and to the alleged rights of the plaintiff in the good will connected with the said infringing filters. As, however, no questions as to liability or accountability for patent infringement are involved in this case, and as the plaintiff does not claim the exclusive right to make oil filters and no passing off of the defendant's present products as being those of the plaintiff are here alleged, it is apparent that the rights asserted by the plaintiff with respect to the alleged similarity and good will just mentioned would arise only if the defendant's present alleged trading upon the appearance and good will of its former infringing filters constituted a misappropriation of good will belonging to the plaintiff, and that must be based upon the assumption that the conduct complained of amounts to a false representation that the defendant's present filters are of the same kind as, or, in quality or efficiency, are equal or superior to, the plaintiff's filters, with resultant injury to the plaintiff. That this is the real basis on which the plaintiff seeks equitable relief here is, in my opinion, clear from its oral arguments and its briefs. Thus, in one of such briefs it says: "On the argument of the case at bar, the Court propounded to counsel an illustration as to the rights existing where one farmer had lost the sale of a good horse because his competing

farmer had sold a poor horse to the purchaser on false representations as to the quality of the poor horse. On principle we submit that there is no reason for denying relief where the two elements, deceit and lost sales, are affirmatively proved in the relation of cause and effect. * * * Unfair competition being a branch of equity jurisprudence, Courts of equity should recognize, and we submit that they are recognizing, the necessity in the interest of justice of not restricting relief to the very limited class of cases involving palming off. As pointed out by Judge Hand in the Ely-Norris Safe Case, wherever (1) there has been deceit, and (2) the plaintiff has lost sales as the result of that deceit, the basis is presented for equitable intervention."

It is equally clear that the only passing off here alleged, so far as similarity in color, marking, or appearance is concerned, is the passing off of the defendant's present filters as being the same as defendant's former infringing filters. The claim of the plaintiff in this respect is summarized, in its last brief, as follows: "If we * * * get to the substance of the matter as set forth in the complaint, it shows that the defendant built up a great good will around an infringing filter, and it shows that the defendant is capitalizing on that good will by selling a new spurious device dressed up exactly like the old device, with the intent to deceive the buying public into the belief that it is a device of the type of the old device."

I reach the conclusion that the claimed cause of action on which this suit is based is, in substance and effect, the same as that asserted in the case of American Washboard Co. v. Saginaw Mfg. Co., supra, and that, therefore, the decision in that case precludes the plaintiff from obtaining any of the relief which it here seeks.

An order may be entered dismissing the bill, with costs to the defendant, to be taxed.