**MOTOR IMPROVEMENTS, Inc., v. A. C. SPARK PLUG CO.**

No. 6787.

Circuit Court of Appeals, Sixth Circuit.

Dec. 9, 1935.

As Amended on Granting of Rehearing Jan. 13, 1936.

Nathan L. Miller, of New York City (Clark & Henry, of Bay City, Mich., and Carl M. Owen, Theodore S. Kenyon, and Frederick Bachmann, all of New York City, on the brief), for appellant.

John M. Zane, of Chicago, Ill. (Prewitt Semmes, of Detroit, Mich., and Harold W. Norman and Zane, Morse, Zimmerman & Norman, all of Chicago, Ill., on the brief), for appellee.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

MOORMAN, Circuit Judge.

The appellant, a Delaware corporation, is an exclusive licensee under the Sweetland patents, Nos. 1,594,334 and 1,594,335, for oil filters for automobiles. It manufactures the filters covered by the patents, labels them "Purolator," and sells them to manufacturers and users of automobiles. The appellee, a Michigan corporation, is a subsidiary of the General Motors Corporation. In June of 1925, the latter corporation adopted the Sweetland filter as standard equipment for the Cadillac, Buick, and Oakland automobiles, which it manufactures. Between that date and November of 1926, it bought about 300,000 of appellant's filters. In the fall of 1926, the appellee began manufacturing a filter known as the A C Filter, and thereafter the General Motors Corporation equipped its cars with the appellee's A C Filter. The appellant, conceiving that the filter was an infringement of its patent rights, brought suit therefor against the General Motors Corporation and the appellee, and obtained a decree adjudging the patents valid and enjoining the defendants from making and selling the A C Filter therein found to infringe. Motor Improvements v. General Motors Corporation (C.C.A.) 49 F.(2d) 543. During the infringing period, the appellee sold about 8,000,000 of its infringing filters. After the issuance of the injunction, it changed the internal construction of its device without changing its shape, color, marking, or appearance, and thereafter sold the changed device on representations that it was the same as the earlier infringing one. Alleging that this practice constituted unfair competition, the appellant brought this action to enjoin appellee from representing the device to the public as being the same as the earlier infringing device, and for damages which it had sustained as the result of such unfair representations. The answer raised the question of the sufficiency of the averments of the bill to constitute a valid cause of action in equity. This defense was heard under Equity Rule 29 (28 U.S.C.A. following section 723). On the hearing, the court interpreted the bill as asserting a right to the relief sought upon the theory that the appellee was falsely representing to the public that its filter was equal in quality and efficiency to the filter of the appellant, and being of opinion that such representation, in the absence of a showing that the appellee's filter was palmed off on the public as the

appellant's, did not constitute unfair competition, dismissed the bill.

The bill alleges that the appellant has built up a large and profitable business in the manufacture and sale of its filters, that there was no other competing filter in the automobile field within the price range of its filter until appellee began to make its infringing filter, that appellee built up a large business for its infringing filter prior to the issuance of the injunction in the infringement suit, that it built up its business for the filter solely because the public associated the filter with the appellant's filter as effective for oil filtration, and that after the appellee was enjoined from making and selling its infringing filter it began the manufacture and sale of a spurious filter that would not filter at all and, in violation of appellant's rights, is now making and selling the spurious filter under marks indistinguishable from the infringing A C Filter, representing it to be interchangeable with the infringing A C Filter and also with the appellant's filter, and leading the public to believe that the spurious filter is substantially the same as its earlier infringing filter.

■■ The appellee contends that since the bill does not allege that it is passing off its filter on the public as the filter of appellant, there is no showing of an invasion of a property right or the good will of appellant, and therefore nothing stated that would justify a court of equity in enjoining its methods of sale as unfair competition. It says that the most that the bill alleges is that it is deceiving the public by representations as to the quality and effectiveness of its filter, and the doing of that, in the absence of an allegation of the palming off of its filter as the appellant's, is not enough to support an equitable action for unfair competition. We agree as to the deception imposed upon the public, but we cannot agree that the palming off by one competitor of his goods as those of another is the sole test of unfair competition. While it is a common method of practicing such competition and, when indulged in, is held to be the essence of the wrong [Turner & Seymour Mfg. Co. v. A. & J. Mfg. Co. (C.C.A.) 20 F.(2d) 298; Ely Norris Safe Co. v. Mosler Safe Co. (C.C.A.) 62 F.(2d) 524; Krem-Ko Co. v. R. G. Miller & Sons (C.C.A.) 68 F.(2d) 872], it is not the sole method, certainly not the sole ground, for equitable intervention to enjoin injury to a competitor's rights [Art. 9-a, Nims on Unfair Competition (3d Ed.) (1929)], and we do not view American Washboard Co. v. Saginaw Mfg. Co. (C.C.A. 6), 103 F. 281, 50 L.R.A. 609, as holding that it is. The obvious result of passing off goods for and as those of a competitor is injury to the competitor and fraud upon the public. In such cases a court of equity will intervene to prevent a recurrence of the wrongs, and in order effectively to do so will stop the productive practice. That it will enjoin the bringing about of the same wrongful results by other means or practices is exemplified in International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293, and Vogue Co. v. Thompson-Hudson Co. (C.C.A. 6), 300 F. 509. In the first of these cases, a competing news service appropriated, before publication by the plaintiff, news which the plaintiff had gathered for its exclusive use; in the second, the defendants used upon ladies' hats the name "Vogue," copyrighted as a magazine name. It was held in both cases that there was unfair competition, and that as injury to the plaintiff and fraud upon the public were present, nothing else, as said in the Vogue Case, was needed to invoke equity.

■ The appellant can have no legal objection to the appellee's falsely representing its present filter to the public as superior to other filters or as having meritorious features which the appellee lawfully could but does not incorporate into it. That is not what it is doing. It represents the filter as being the same as its infringing filter, the sale of which would be an infringement of appellant's rights. This representation is untrue. The appellant has the exclusive right to make and sell all equivalents of its filters. That has been adjudged. The appellee trespassed upon that right for many months by selling an infringing device, and now that it can no longer do so, it is selling a spurious device upon the reputation and good will which it wrongfully built up for the infringing one. Deception of the public and injury to the appellant are quite as definite and certain as they would be had the appellee continued to sell the infringing article. In such situation equity should look through the subterfuge to realities and enjoin the sale of the appellee's filter, except under markings and representations plainly showing that it is not the same as,

but is wholly different from, the infringing device.

The order dismissing the petition is set aside, and the cause remanded, with direction to the trial court to hear the cause on the pleadings and such proofs thereon as may be offered.