**DOOLEY IMPROVEMENTS, Inc., v. CENTRAL HANOVER BANK & TRUST CO., OF NEW YORK et al.**
No. 55261.

District Court of the United States for the District of Columbia.
May 23, 1939.

532

Drury W. Cooper, of New York City, Harold W. Norman, of Chicago, Ill., and A. K. Shipe, of Washington, D. C., for plaintiff.

William H. Davis, Theodore S. Kenyon, Frederick Bachman, and George E. Faithfull, all of New York City, and Lee B. Kemon, of Washington, D. C., for defendants.

GORDON, Justice.

This is a suit in equity under the provisions of Sec. 4918, R.S. (T. 35, Sec. 66, U. S.C., 35 U.S.C.A. § 66), by Dooley Improvements, Inc, an Illinois corporation, against Central Hanover Bank & Trust Company of New York, a New York corporation, Motor Improvements, Inc., a Delaware corporation, and Ernest J. Sweetland, a citizen and resident of California, jurisdiction of this court being invoked under the Act of March 3, 1927 (44 Stat. 1394, T. 35, Sec. 72a, U.S.C., 35 U.S.C.A. § 72a).

The purpose of this suit is to obtain relief on the part of Dooley Improvements, Inc., the owner and assignee of United States patent No. 1,847,817, issued to Don Cole on March 1, 1932 (and hereinafter referred to as the Cole patent), against the defendants Ernest J. Sweetland, Motor Improvements, Inc., and the Hanover Bank, they being, respectively, the patentee, the exclusive licensee, and trustee under a certain indenture executed by Motor Improvements, Inc., to secure a bond issue by that corporation, of United States patents Nos. 1,594,334 and 1,594,335, issued to Sweetland on July 27, 1926 (and hereinafter referred to as the Sweetland patents). It is alleged that the Cole patent and the two Sweetland patents are interfering patents. The bill prays for a decree adjudging that the Cole patent and the Sweetland patents are interfering patents, that Cole is the first and original inventor of the invention covered by the Sweetland patents,

that the Cole patent is good and valid, and that the two Sweetland patents are void.

The answer of the defendants denies that the Cole and Sweetland patents are interfering patents, and avers that the Cole patent is void.

The Cole and Sweetland patents have been involved in litigation in the Sixth Circuit and in the Third Circuit.

Motor Improvements, Inc., sued General Motors Corporation and the A. C. Spark Plug Company, a wholly owned subsidiary of General Motors Corporation, in the United States District Court for the Eastern District of Michigan, charging infringement of five patents, including the two Sweetland patents here involved. Neither Cole nor Dooley Improvements, Inc., was a party to that suit. Judge Tuttle dismissed the suits (which had been consolidated for trial), holding orally that all the patents sued upon were invalid because of anticipation and prior use, but stating that, if valid, all the claims in suit would have been infringed by the devices of the defendants in those suits. The Circuit Court of Appeals for the Sixth Circuit reversed as to the two Sweetland patents here involved, holding, on April 29, 1931, in a lengthy opinion by Circuit Judge Mack, that the Sweetland patents here involved were valid and infringed. Motor Improvements v. General Motors Corporation et al., 49 F.2d 543, certiorari was denied, 284 U.S. 663, 52 S.Ct. 43, 76 L.Ed. 561.

In 1932 Dooley Improvements, Inc., plaintiff herein, brought suit in equity in the United States District Court for the District of Delaware for relief under Sec. 4918, R.S., against Motor Improvements, Inc., a Delaware corporation, and Ernest J. Sweetland, alleging an interference between the same Cole patent and Sweetland patents which are involved herein, and also charging infringement of the Cole patent. Motor Improvements, Inc., was served with process, but no service was had upon Sweetland. Sweetland appeared specially and moved to dismiss because the court had not obtained jurisdiction of his person, he being a resident of California. Motor Improvements, Inc., moved to dismiss the bill, insofar as relief was asked under Sec. 4918, R.S. (interference), on the ground that that section requires that suit be brought "against the owners of the interfering patent" and Sweetland, one of the owners of the allegedly interfering pat-

ents, was not before the court. District Judge Nields granted the motions to dismiss the bill, insofar as it was founded upon Sec. 4918, and further granted the motion of Sweetland to dismiss the bill insofar as it charged him with infringement. Dooley Improvements, Inc. v. Motor Improvements, Inc. et al., D.C., 1 F. Supp. 641. This left the suit pending only against Motor Improvements, Inc., and only insofar as a cause of action was set out against it for infringement. Dooley Improvements, Inc., appealed from Judge Nields' order of dismissal, and on July 6, 1933 the Circuit Court of Appeals for the Third Circuit affirmed, Dooley Improvements, Inc. v. Motor Improvements, Inc. et al., 66 F.2d 553, certiorari was denied, 290 U.S. 689, 54 S.Ct. 127, 78 L.Ed. 594.

Thereafter, in March, 1934, Judge Nields denied a motion of Dooley Improvements, Inc., to dismiss its bill without prejudice. 6 F.Supp. 161. On April 14, 1934 Dooley Improvements, Inc., filed a petition for mandamus in the Circuit Court of Appeals for the Third Circuit, praying that the District Court for the District of Delaware be commanded to enter an order dismissing petitioner's bill in that court. On August 15, 1934 the Circuit Court of Appeals denied the writ and dismissed the petition, Dooley Improvements, Inc. v. Nields, District Judge, 3 Cir., 72 F. 2d 638.

On January 27, 1937, in an exhaustive opinion, Judge Nields held the Cole patent to be invalid and dismissed the bill of complaint. Dooley Improvements v. Motor Improvements, Inc., D.C., 18 F.Supp. 340. I am informed by counsel, in oral argument and in the briefs, that the appeal of Dooley Improvements, Inc., from Judge Nields' decision was dismissed by the Third Circuit Court of Appeals, 104 F.2d 1013, because it was not taken within the time prescribed.

The instant suit was filed on January 18, 1933, while the Delaware suit was pending, and on motion of the defendants herein this court, on March 30, 1933, ordered the present suit stayed until final determination of the Delaware suit. On January 9, 1934 the order of March 30, 1933 was vacated and the defendants were directed to answer, which they did on February 8, 1934.

It may be noted at this point that the same counsel who represented General Motors Corporation in the infringement litigation in the Sixth Circuit, above referred to, and later in unfair competition litigation in the same Circuit, concerning the same subject matter (Motor Improvements, Inc. v. A. C. Spark Plug Co., 6 Cir., 80 F.2d 385, reversing D.C., 5 F.Supp. 712), also represented Dooley Improvements, Inc., assignee of Cole, in the Delaware suit, about referred to, and now represent Dooley Improvements, Inc., plaintiff in the instant suit. It further appears that plaintiff's expert Hammer, who testified in the present suit, was being paid by General Motors Corporation (R. 181), and that the witnesses Willard, Prophet and Morrison, whose depositions are in evidence in this case as plaintiff's exhibits, were connected with or employed by General Motors Corporation when they gave their depositions.

Sec. 4918, R.S., upon which the present suit is based, provides as follows: "Whenever there are interfering patents, any person interested in any one of them, or in the working of the invention claimed under either of them, may have relief against the interfering patentee, and all parties interested under him, by suit in equity against the owners of the interfering patent; and the court, on notice to adverse parties, and other due proceedings had according to the course of equity, may adjudge and declare either or both of the patents void in whole or in part, upon any ground, or inoperative, or invalid in any particular part of the United States, according to the interest of the parties in the patent or the invention patented. But no such judgment or adjudication shall affect the right of any person except the parties to the suit and those deriving title under them subsequent to the rendition of such judgment."

■ The first question for determination is whether the Cole patent, on the one hand, and the Sweetland patents on the other, are in fact interfering patents. In order for the plaintiff herein to prevail, it must first show the fact of interference, for upon that fact the right to relief under this statute is based. Westinghouse Electric & Mfg. Co. v. De Forest Radio T. & T. Co., 3 Cir., 21 F.2d 918, 923; Simplex Railway Appliance Co. v. Wands, 8 Cir., 115 F. 517, 520.

■ It is well settled that for patents to be "interfering" within the meaning of this statute, there must be substantial identity between the claims, interpreting them in the light of the text, specifications, draw-

534

ings and the prior art. International Signal Co. v. Vreeland Apparatus Co., 2 Cir., 278 F. 468, 470. Otherwise stated, two patents interfere, within the meaning of this statute, only when they claim in whole or in part the same invention. Gold & Silver Ore Separating Co. v. United States Disintegrating Ore Co., 10 Fed.Cas. p. 539, No. 5,508.

■ Moreover, there is a recognized prima facie presumption that patents are not interfering, that is, that they do not claim the same invention. Lowry v. Cowles Electric Smelting & Aluminum Co., C.C., 56 F. 488, 493, Taft, Cir.Judge. Or, as stated by the Circuit Court of Appeals for the Ninth Circuit, in Norton v. Jensen, 90 F. 415, 421, there is a presumption "in favor of their diversity."

The patents here involved must be considered and compared in the light of the above principles.

The state of the art, the difficulties sought to be overcome, and the solutions advanced by inventors working in this field are concisely set forth in the opinion of Circuit Judge Mack in Motor Improvements v. General Motors Corporation et al., 6 Cir., 49 F.2d 543, at pages 544, 545.

Considering first the Cole patent, it appears that it was issued on March 1, 1932, on an application which was filed December 18, 1918. The invention relates to "improvements in lubricating systems and has special reference to an improved lubricating oil system for internal combustion engines." In his specification Cole refers to known pressure lubricating systems, in which "the lubricating oil is drawn from an oil sump in the base of the machine by a pump which forces the oil under pressure to the several bearings of the machine." (Pat., p. 1, lines 6-10.)

He states further: "Such systems do not provide any adequate means for filtering the oil and thus freeing it from the accumulation of foreign matter such as metallic particles and sand, nor do they provide adequate means for separating the oil from any water which accumulates with the oil." (Pat., p. 1, lines 10-16.)

He further points out that the parts of internal combustion engines "soon grind out, due to the large quantities of sand and grit which are accumulated in the operation of the engine." (Pat., p. 1, lines 23-25.)

Cole then proceeds to describe his invention as follows: "In my improved system I provide an associated oil filter to which I continuously pump the oil from the engine and from which I continuously pump or force the oil under pressure, after filtering, to the several points of delivery, i. e., the bearings to be lubricated." (Pat., p. 1, lines 54-60.)

The drawings of the Cole patent illustrate two types of oil filter. Fig. 1 shows a lubricating system with a gravity filter, containing two coned filtering partitions, "through both of which the oil must pass to reach the bottom of the casing." (Pat., p. 2, lines 33-35.) The size of this filter is not definitely indicated, but from the drawing it appears to be almost as large as the engine itself. The patent merely states that the filter is "of sufficient capacity so that the oil will not have to be forced through the filter in order to filter it fast enough to supply a sufficient quantity for the force feed system." (Pat., p. 2, lines 17-20.)

Fig. 2 shows a lubricating system wherein a pressure filter is used, the oil being pumped up through the bottom of the filter casing and rising through a series of cones arranged with their small ends up; the oil is then forced back to the engine through a return pipe. It appears that in both systems all the oil used to lubricate the engine must pass through the filter casing, and must pass through each of the cone-shaped filtering units. The testimony of plaintiff's expert Hammer indicated that an engine such as shown would require approximately 100 to 150 gallons of oil an hour for proper lubrication. It thus appears that the oil would have to pass at that speed through the cone-shaped filter partitions in the filter casing.

Cole further makes provision for "filtering means of ample capacity * * * to continuously remove from the engine the intaken sand, and at the same time to force the oil to the bearings in sufficient quantity and at sufficient pressure to cause them to be thoroughly flooded with oil." (Pat., p. 1, lines 60-69.)

In his description of the gravity filter (Fig. 1) Cole states: "the oil is filtered slowly with a high pressure oil delivery means * * *." (Pat., p. 1, lines 71-73.)

"I provide a suitable gravity oil filter 3 of sufficient capacity so that the oil will

not have to be forced through the filter in order to filter it fast enough to supply a sufficient quantity for the force feed system. * * *" (Pat., p. 2, lines 16-20.)

"I have shown it as having a metal casing 8 in the upper part of which I arrange two coned filter partitions 9 and 10, carrying suitable filtering material and through both of which the oil must pass to reach the bottom of the casing." (Pat., p. 2, lines 29-35.)

In his description of the pressure filter (Fig. 2) Cole states: "The filtering partitions or walls comprise a plurality of cones 32 arranged in nested relation with the casing. * * * Preferably the cones are arranged with their smaller ends up so that the sand or grit filtered out will spread to the largest diameter thereof and thus have a minimum clogging effect." (Pat., p. 2, lines 119-129.)

Cole gives no description of the filtering material to be used in Fig. 2. He further states: "The lubricating system as in the first form, is a closed circuit or system, which includes the base of the engine, and in each instance the system includes the relatively large filter through which the oil can flow relatively slowly."

The Cole patent contains a single claim, which is not original with him but which ne copied into his application from Sweetland patent No. 1,594,334 on November 27, 1927, more than a year after the Sweetland patents had issued. This claim is identical with Claim No. 3 of Sweetland No. 1,594,-334 (as it originally appeared, and before it was limited by disclaimer), and reads as follows: "In a lubricating system for an automotive engine containing a body of oil exposed to contamination by deleterious solids, means to circulate the oil to the parts to be lubricated and to a filter casing, and a fine texture filter in said casing having an area and capacity so correlated to the size of the system and the contaminating conditions under which the system is used as to remove said deleterious solids at a rate substantially equal to the rate of contamination of said oil by said deleterious solids."

The two Sweetland patents may be considered together, since they disclose but one underlying inventive idea. No. 1,594,-334, issued July 27, 1926, covers a method of preventing wear of the moving parts of an automotive internal combustion engine. No. 1,594,335, issued on the same date, covers a means for filtering oil in the lubricating system of an internal combustion engine. The Sweetland patents disclose the combination of a particular type of filter with the lubricating system of an automobile engine. It appears that the filtering arrangement is such that only a minor flow of oil passes through it, the filtered oil being conveyed not directly to the bearings (as in Cole), but back to the crank case. The filter used by Sweetland is essentially one having a surface of extensive area compacted within a small casing. The oil is drawn from the base of the crank case, through a pipe, into the pump, and then pumped through another pipe to the filter casing. The filtered oil is then returned from the outlet of the casing, through a third pipe, to the crank case.

Inside Sweetland's filter casing are arranged a plurality of filtering elements. As to these elements Sweetland states: "each filter element consists of an annular member 31 formed of wire netting reticulated metal or the like enclosed by a close-woven cloth fabric 32, such as duck, canvas, chain-cloth or the like, having an extremely fine mesh which will serve to collect the finest particles suspended in the oil to be filtered. In use, at the commencement of the filtering operation, a portion of the fine suspended particles will pass through the fabric 32, but within a short time the impurities collected thereon will serve to prevent the passage therethrough of any of the fine particles with the result that only the clear oil freed from all abrasive suspended matter will pass through the fabric. * * *" (Pat. 1,594,334, p. 3, lines 6-22.)

"The finely woven non-metallic fabric of the filter having such an extensive area within a small compass makes a very satisfactory filter for the purpose and I have found that it serves to produce a filter bed which is capable of arresting the very minute and finely divided particles of solid matter that are present in the used oil.

* * * * * *

"Although the passage of the filtered oil through the fabric of each filter element in my method is retarded by the slime bed and the impurities which are collected thereby, the required flow of filtered oil through the filter is obtained by reason of the extensive filtering surface which is provided by the combined filtering surfaces of the several filter elements." (Pat. 1,594,-334, p. 3, lines 48-56.)

The specification of Sweetland No. 1,-594,335 further states: "My invention which provides a large filtering area, large enough to filter the entire contents of the crank case once in every hour of engine operation, or more often and remove the impurities at a more rapid rate than they are formed, and yet enclosed in a casing of sufficiently small size to be carried on the engine provides a novel solution of both these problems." (Pat., p. 3, line 129 to p. 4, line 7.)

According to the Cole patent, all the oil required for lubricating the bearings must pass successively through the screens or partitions of his filter casing. The "suitable filtering material" of such partitions must be of such open structure as to permit this rapid flow, even in a gravity type filter. It appears from the drawings that the area of Cole's filter partitions is substantially the same as the cross-sectional area of the casing.

The expert Dyer, testifying by deposition for the defendants, stated: "It would be impossible with the arrangement proposed by Cole to perform a filtering operation at the velocities which would be involved."

He further testified that if woven fabric were used on Cole's partitions "the tendency would be to spread the threads so as to open up the spaces between the threads and permit particles and solid matter to pass through."

And further: "It would result in the screening operation instead of a filtering. Particles would be driven through from the velocity of the flow * * * particles of destructive size would have the opportunity to go through."

On the other hand, Sweetland's structure shows an extensive area of filtering surface combined with the minor flow of oil to the filter casing and then back to the crank case, producing a mere seepage of the oil through the filtering material, and thus effecting true filtration. Instead of using a surface substantially equal to the cross-sectional area of the casing, as Cole does, Sweetland employs a surface many times that size, and instead of passing 100 to 150 gallons of oil per hour through the casing, as in Cole, Sweetland passes from 5 to 7 quarts (which is the crank case content) once an hour through his filter, at minimum engine speed. It appears that Cole achieves nothing more than a screening out of coarse particles such as sand and grit; he does not achieve actual filtration, indeed he cannot, for if he uses the fine texture filter claimed by him, but nowhere shown in his patent, the size would have to be so great as to be impracticable. Sweetland, however, achieves true filtration. There is built up on his fine texture fabric a slime bed or "filter cake", deposited by fine particles from the slowly seeping oil, and this "filter cake" in turn becomes an effective filtering medium which removes the finest abrasives, including those which are actually smaller than the interstices through which the oil passes.

The expert Dyer, testifying by deposition, also stated, in this connection: "These particles moving with almost infinite slowness approach the openings and adhere or build up on the surface, while the liquid slowly seeps by. In other words, the velocity of the liquid current is so slight that there is no tendency to dislodge the small particles.

* * * * * *

"As the particles build up on the filter surface they form a gradually increasing layer that in the art is known as a filter cake, and this filter cake is porous, so that the liquid continues to pass through it while the solid particles still build up on the surface.

"The whole theory of filtration is that the particles must move with almost infinite slowness towards the filter surface, and then also in the case of filtration, or in the case at least of surface filtration, the surface retains particles of all sizes, whether they be very small or very large, whereas in the case of screens, the only particles that are retained are those that are too large to pass through the mesh of the screen."

The plaintiff's expert Hammer likewise testified that screening "is quite different, as I regard it, from filtering, which looks to the removal of finer particles."

He further testified that high velocity is inimical to fine filtration and that the "filter cake" of deposited particles on a true filter is itself a good filter, and will remove finer impurities than the material on which the "filter cake" is deposited.

From what has been said above, it seems to me that one of the vital differences between the Cole and Sweetland inventions is this: In the Cole invention all of the oil must pass through all of the filter elements. In Sweetland, on the other hand, while the oil passes through the filter elements, it

does not pass through each of them; some of the oil passes through one element, some through another, and so on. In other words, the same oil permeates through only one surface.

■■ After a careful study and comparison of the Cole and the Sweetland patents, and a consideration of the testimony and exhibits before me, I am of opinion that no interference exists. The single claim of the Cole patent must be construed in the light of Cole's specification and drawings. When so construed, it does not include the correlation in a lubricating system of a fine texture filter having an extensive area within a small compass, so arranged that true filtration is achieved by slow seepage of the oil through a single extensive surface, because no such arrangement is disclosed in Cole. All the claims of the Sweetland patents, except the original third claim of No. 1,594,334, have "incorporated in them", as expressed by counsel for the plaintiff, "the idea of an extensive filtering surface within a small compass". The same limitation is now incorporated in said third claim by the disclaimer filed by Sweetland on February 29, 1932, before Cole's patent issued, in the following language: "Hereby make disclaimer from claim 3 of said Letters Patent No. 1,594,334 of any lubricating system except where the fine texture filter has an extensive area within a small compass and is adapted and arranged to carry out the method set forth in the said patent substantially as and for the purposes therein described."

All the Sweetland claims are thus distinguished from the single claim of Cole by specific limitation to a particular type of filter which Cole neither discloses nor claims.

Support for the view that the Cole and Sweetland patents do not claim the same invention is found in the fact that the invention covered by the Sweetland patents has gone into widespread and successful commercial use, more than twelve million having been made and sold by Motor Improvements, Inc., under its exclusive license, and the A. C. Spark Plug Company having sold many more filters which have been adjudged infringements of the Sweetland patents. It does not appear that Dooley Improvements, Inc., ever manufactured any filters under the Cole patent for commercial purposes. It appears that a few of them were built for "test purposes" (the tests being conducted at General Motors Proving Grounds). Cole himself, testifying by deposition on May 18, 1935 in the Delaware suit, stated that prior to June 3, 1931 neither of the filters described in his patent had ever been made by or for him; that neither was ever tested by him; and that neither was ever used commercially by him.

Further support is also found in the above-mentioned case of Motor Improvements, Inc. v. General Motors Corporation, 6 Cir., 49 F.2d 543. After the motion of appellees for a re-hearing in that case had been denied, they petitioned the Sixth Circuit Court of Appeals for leave to move the District Court to reopen the case in order to submit to it the matter of Cole's application, which was then in interference with Sweetland No. 1,594,33 in the Patent Office. The interference in the Patent Office involved the third claim of Sweetland No. 1,594,334, which claim was not in issue in the infringement suit against General Motors Corporation in the Sixth Circuit. In a memorandum opinion, 105 F.2d 892 (a certified copy of which is here in evidence) the Court denied the motion, saying:

"The very failure to bring about interference with the Sweetland claims here in suit after Cole had become fully advised thereof through the grant of the patents is the strongest evidence that he and his counsel did not deem his alleged invention to be an anticipation of those claims. In this view, we fully concur.

"The essence of the Sweetland device is a multiple pad filter, that is, one in which the oil does not go through all of the filter pads, but through only one of them and then out so that, despite the slow rate, a sufficient quantity is thus filtered.

\* \* \* \* \* \*

"It is clear that in the Cole device the oil goes through each one of the conical filter elements. \* \* \* In our judgment, Cole's purely paper device is at the best but cumulative evidence to the alleged anticipations considered in the opinion heretofore announced."

■ There remains to be considered the case of Sweetland v. Cole, 53 F.2d 709, decided by the Court of Customs and Patent Appeals on December 7, 1931. As above noted, Cole's application was filed on December 18, 1918. Sweetland's original application was filed on July 3, 1920. The Sweetland patents issued on July 27, 1926.

538

On November 27, 1927 Cole copied the third claim of Sweetland No. 1,594,334 and asked for an interference. On May 15, 1928 the interference was declared. Sweetland moved to dissolve the interference, upon the ground that Cole had no right to make the claim, and the decision was in favor of Cole. Sweetland then appealed to the Board of Appeals in the Patent Office, the primary point being whether Cole had the right to make the claim. On April 25, 1930 the Board of Appeals held that Cole's disclosure was sufficient to support the claim. Sweetland then appealed to the Court of Customs and Patent Appeals, which rendered the above-mentioned decision on December 7, 1931. That court affirmed the decision of the Board of Appeals, holding that Cole's disclosure was sufficient to support the claim. That case, however, is not controlling here. The precise claim there involved is not involved in the instant suit, it having been limited more than seven years ago by Sweetland's disclaimer to it filed in the Patent Office. Moreover, the court there did not have, as I have here, the benefit of testimony before it to show the dissimilarity of the inventions covered by the respective patents. Cf. Electrons, Inc. v. Coe, 69 App.D.C. 181, 99 F.2d 414, 424.

In conclusion, it is interesting to note Cole's conduct and admissions in connection with the issue of interference. When Cole had the Sweetland patents before him after their issue in July, 1926, he had to decide how far they interfered with his invention and what subject matter he found to be common to the Sweetland patents and his pending application. With all the Sweetland claims before him, he limited his assertion of interference to Claim 3 of Sweetland No. 1,594,334, and elected not to bring about an interference with the remaining and more limited claims of the Sweetland patents. Later, Cole expressly stated, before the Court of Customs and Patent Appeals, on appeal from the decision of the Board of Appeals, that he was not entitled to make the more limited claims of the Sweetland patents. In his brief in that court (which is in evidence here), in discussing the Sixth Circuit decision, he said:

"It will serve to clarify the situation if it is stated at once and in direct language that the Sweetland patent has three claims, that claims 1 and 2, only, are involved in the Sixth Circuit case and claim 3, only, is involved here.

*   *   *   *   *   *

"If Sweetland did something else or further, making the same the subject matter of his claims 1 and 2, that was his right so far as we are concerned here. Cole did not make, and does not claim to have the right to make, either claim 1 or claim 2. * * * There is nothing inconsistent in Cole being first as to the subject matter of the count and Sweetland being first as to the subject matter of his claims 1 and 2.

*   *   *   *   *   *

"The Court in the Sixth Circuit case simply rendered opinion that he (Cole) does not anticipate claims 1 and 2, which means meeting them in their entirety. He never said he did, and he does not say so now.

*   *   *   *   *   *

"Cole does not exemplify claims 1 and 2 of Sweetland in their entirety."

The language immediately preceding is also applicable to Claim 3 of the Sweetland patent as now limited by disclaimer. As a result of the decision of the Court of Customs and Patent Appeals, Cole obtained a claim for a broader and less specific monopoly than that which had been upheld by the Sixth Circuit Court of Appeals as the specific invention of Sweetland. It is well settled that interference does not exist, within the meaning of the patent statutes, between a patent (such as Cole's) containing a broad claim, and another (such as Sweetland's) containing more restricted claims. Boston Pneumatic Power Co. v. Eureka Patents Co., C.C., 139 F. 29, 31; Donner v. American Sheet & Tin Plate Co., C.C., 160 F. 971.

Inasmuch as I find that there is no interference between the Cole patent and the Sweetland patents, it would be improper for me to pass upon the validity of these patents.

Counsel will prepare findings of fact and conclusions of law, and a decree dismissing the bill of complaint.