XEROX CORPORATION, Plaintiff,

v.

NASHUA CORPORATION, American Electrofax Corp. and Copy Systems, Inc., Defendants,

v.

RADIO CORPORATION OF AMERICA, Interpleaded Defendant.

No. 69 Civ. 546.

United States District Court,
S. D. New York.

July 2, 1970.

Brumbaugh, Graves, Donohue & Raymond, New York City, for plaintiff; Francis J. Hone, New York City, Paul M. Enlow, Stamford, Conn., of counsel.

Cadwalader, Wickersham & Taft, New York City, for defendant, Nashua Corp.; Peter M. Brown, Terence F. Gilheany, New York City, Kenway, Jenney & Hildreth, L. William Bertelsen, Boston, Mass., of counsel.

William K. Kerr, Fish, Richardson & Neave, New York City, for interpleaded defendant; David W. Plant, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Nashua Corporation (Nashua), the defendant herein, manufactures and sells "Electrofax Paper," a zinc oxide coated paper used in an electrophotographic process, under a royalty license agreement with Radio Corporation of America (RCA), the owner of patent No. 3,052,539 ('539). This action was commenced by Xerox Corporation (Xerox) against Nashua upon a claim that its manufacture and sale of the paper infringes upon Xerox patent No. 3,121,006 ('006). Nashua, in its answer, denied infringement, counterclaimed against Xerox for a declaratory judgment that '006 was invalid and asserted a second counterclaim to interplead RCA with Xerox, upon a claim that when related to Nashua's manufacture, use and sale of Electrofax Paper, RCA's patent '539 interferes with Xerox patent '006. Nashua, under its counterclaim for interpleader, seeks an order that RCA be joined as a party defendant to respond to the complaint, and further that the court order Xerox and RCA to interplead their respective claims and adjudge the validity of the patent owned by each.

The substance of Nashua's position is that the RCA and Xerox patents cover the same invention, or "interfere"; that it cannot be liable to pay tribute to both patent owners where the patents interfere; that consequently Xerox's claim against Nashua for infringement of '006 and RCA's claim against Nashua for royalties under the license agreement conflict and it may be exposed to double payment by reason of its manufacture and sale of electrostatic copying paper. Xerox and RCA deny interference, and consequently any conflict in their claims against Nashua, although on different grounds. Xerox asserts that it holds the generic patent and RCA an improvement patent; that both are patentable inventions; and that the user of an improvement patent may properly be liable to the holder of the generic patent as well.[1] RCA asserts that '006 is exclusively a process patent, whereas '539 contains both process and product claims; that it has licensed only its product claims to Nashua; and that such product claims do not interfere with the process claims of the Xerox patent.[2] Accordingly, Xerox and RCA move to dismiss the interpleader counterclaim.

▆▆ Although Nashua's invocation of interpleader in this case is novel, its assertion that if the two patents interfere, interpleader should lie because of the risk of multiple liability is not without appeal. Rule 22(1) of the Federal Rules of Civil Procedure authorizes an interpleader action[3] where (1) two or more persons have claims against the interpleading party, and (2) as a result, the interpleading party is or may be exposed to multiple liability. It is no longer required that the claims be of common origin[4] or that the interpleading party be a wholly neutral stakeholder.[5] The rule does not even require a "stake" or "fund" as such. The action will lie where all that is involved is the threat of multiple liability on what is in fact but a single claim or obligation.[6] While the patent situation is more complex than the normal interpleader situation, its complexity alone does not foreclose interpleader.

▆▆ Nonetheless, the court need not finally decide whether interference between patents provides a proper circumstance for interpleading the patent owners, for the mere assertion by Nashua in its counterclaim that plaintiff's patent '006 and RCA's patent '539 interfere, an allegation vigorously denied by both patent owners, is not by itself sufficient to warrant interpleader. Nashua postulates a situation where two different courts may hold that the two patents do interfere, but the courts may differ as to which has priority, in which event it asserts it would "have double liability because the two courts were in disagreement on the issue of priority." But whether two patents do or do not interfere is "a mixed question of law and

---

1. *See, e. g.*, Cantrell v. Wallick, 117 U.S. 689, 694, 6 S.Ct. 970, 29 L.Ed. 1017 (1886); Marvel Specialty Co. v. Bell Hosiery Mills, Inc., 330 F.2d 164, 167 n. 3 (4th Cir.), cert. denied, 379 U.S. 899, 85 S.Ct. 187, 13 L.Ed.2d 175 (1964); New Jersey Zinc Co. v. Singmaster, 71 F.2d 277 (2d Cir.), cert. denied, 293 U.S. 591, 55 S.Ct. 106, 79 L.Ed. 685 (1934).

2. *Cf., e. g.*, Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 318, 29 S.Ct. 495, 53 L.Ed. 805 (1909); Rubber Co. v. Goodyear, 76 U.S. (9 Wall.) 788, 796, 19 L.Ed. 566 (1869).

3. Jurisdiction for the counterclaim, as well as the primary infringement action, is properly grounded on 28 U.S.C. § 1338 (a) (1964) ("any civil action arising under any Act of Congress relating to patents").

4. Fed.R.Civ.P. 22(1); *see* Stuyvesant Ins. Co. v. Dean Constr. Co., 254 F.Supp. 102, 108–109 (S.D.N.Y.1966), aff'd per curiam, 382 F.2d 991 (2d Cir. 1967); Girard Trust Co. v. Vance, 4 F.R.D. 255 (E.D.Pa.1945).

5. Fed.R.Civ.P. 22(1); *see* Builders & Developers Corp. v. Manassas Iron & Steel Co., 208 F.Supp. 485, 489–490 (D.Md. 1962).

6. *See* Royal School Laboratories Inc. v. Town of Watertown, 358 F.2d 813 (2d Cir. 1966); Girard Trust Co. v. Vance, 4 F.R.D. 255 (E.D.Pa.1945); *cf.* Texas v. Florida, 306 U.S. 398, 405–412, 59 S.Ct. 563, 830, 83 L.Ed. 817 (1939).

fact, depending upon the construction of specifications and claims and the scientific or other facts which determine the meanings of those claims, and their effect." [7] The court has before it only the two patents (submitted not by Nashua, but by RCA); it does not have any background information relating to the patents or even the file wrappers in the patent office. The denials of interference by the patentees are not without substance. Moreover, each patent carries with it not only a presumption of validity,[8] but a further presumption of the absence of interference,[9] or, stated differently, a "presumption in favor of their diversity." [10] On the meager papers before the court there is not a sufficient showing of interference to overcome those presumptions; the postulated situation envisaged by Nashua remains no more than a conjectural view of possible conflicting holdings.[11]

The court is not prepared to cast Xerox and RCA in the role of unwilling litigants where, upon substantial grounds, they challenge the validity of the basis upon which Nashua seeks to force them into adversary positions, while Nashua presents only its own bare conclusions in support of its position. Although parties should be protected against multiple and conflicting liability, and this court is not unmindful of the teaching of Lear, Inc. v. Adkins,[12] that invalid patent monopolies should not be insulated from challenge, unjustified interpleader proceedings in a case such as this have substantial disadvantages. The interpleader counterclaim serves to force parties into costly litigation and to complicate the underlying infringement proceeding, while its very threat may provide a bludgeon for the infringing party to use in defense or settlement negotiations. Moreover, forcing RCA and Xerox to assert claims of interference, which each disavows, would circumvent the requirements of the statutory interference procedure set up by Congress, under which only owners of alleged interfering patents may maintain suits with respect thereto.[13] Even though that limitation may not be an absolute bar to nonowners achieving the same result through interpleader,[14] the congressional judgment embodied in the interference statute [15] should not be circum-

7. Circuit Judge, later Chief Justice, Taft in Lowry v. Cowles Elec. Smelting & Aluminum Co., 56 F. 488, 495 (C.C.N.D. Ohio 1893); see Sachs v. Montague Shoe Co., 132 F.Supp. 631 (E.D.N.Y. 1955).

8. Lear, Inc. v. Adkins, 395 U.S. 653, 670, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969); 35 U.S.C. § 282 (1964).

9. Cf. IBIS Enterprises, Ltd. v. Spray-Bilt, Inc., 220 F.Supp. 65, 76 (S.D.Fla. 1963), modified on other grounds, 350 F.2d 99 (5th Cir. 1965); Dooley Improvements, Inc. v. Central Hanover Bank & Trust Co., 28 F.Supp. 531, 534 (D.D.C.1939).

10. Norton v. Jensen, 90 F. 415, 421 (9th Cir. 1898).

11. Cf. Bierman v. Marcus, 246 F.2d 200 (3d Cir. 1957), cert. denied Milmar Estate, Inc. v. Marcus, 356 U.S. 933, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958); New York Life Ins. Co. v. Lee, 232 F.2d 811, 813 (9th Cir. 1956). See also Texas v. Florida, 306 U.S. 398, 405–412, 59 S.Ct. 563 (1939) (risk must be "shown to be real and substantial"); Stuyvesant

Ins. Co. v. Dean Constr. Co., 254 F.Supp. 102, 108 (S.D.N.Y.1966), aff'd per curiam, 382 F.2d 991 (2d Cir. 1967).

12. 395 U.S. 653, 89 S.Ct. 1902 (1969).

13. 35 U.S.C. § 291 (1964).

14. Cf., e. g., J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

15. The predecessor to § 291, former § 66 of Title 35, ch. 712, 44 Stat. pt. 1, at 1170 (1926) (repealed 1952), did, by its terms, permit an interference proceeding to be brought by a nonowner. It provided:
"Whenever there are interfering patents, any person interested in any one of them, or in the working of the invention claimed under either of them, may have relief against the interfering patentee, and all parties interested under him, by suit in equity against the owners of the interfering patent. * * *"
Although there is no indication in the legislative history of the 1952 revision of Title 35, see S.Rep. No. 1979, 82d Cong., 2d Sess. (1952), H.R.Rep. No. 1923, 82d Cong., 2d Sess. (1952), U.S.Code Cong. &

vented by an infringer or licensee without at least a substantial showing of harm from conflicting suits.

Finally, denial of this counterclaim would not prevent Nashua from having the issue proffered by it determined in actions where true adversaries are parties. In fact, the validity of the Xerox patent is challenged in this very suit by Nashua; the validity of the RCA patent over the Xerox patent has already been litigated in another suit in this court and is now sub judice.[16] The narrow question presented here is not whether Nashua may challenge the one patent or the other, but whether it may force RCA and Xerox to fight the issue out before Nashua decides which patent to challenge. The court holds only that the involved and complex issues raised by a claim of patent interference should not be resolved on the mere averment in a pleading for interpleader[17] which upon the face of the record meets with substantial challenge.

The motions to dismiss Nashua's counterclaim for interpleader are granted.

Admin.News 1952, p. 2394, that Congress enacted § 291 in its present form in order to change the practice in interference proceedings to limit the class who could bring such actions, the substantial transformation in language strongly compels the inference that such was its purpose.

16. SCM Corp. v. RCA, D.C., 276 F.Supp. 373 (S.D.N.Y.1967).

17. *Cf.* Sachs v. Montague Shoe Co., 132 F.Supp. 631 (E.D.N.Y.1955); Lowry v. Cowles Elec. Smelting & Aluminum Co., 56 F. 488 (C.C.N.D.Ohio 1893).