BANKERS TRUST COMPANY, as
Security Trustee, Plaintiff,

v.

MANUFACTURERS NATIONAL BANK
OF DETROIT, Defendant.

MANUFACTURERS NATIONAL BANK
OF DETROIT, Defendant and
Interpleading Plaintiff,

v.

BANKERS TRUST COMPANY, Ford Motor Credit Company, United States Rail Services, Inc., Brae Corporation, Braecar, Inc., Brae Transportation, Inc., General Electric Railcar Services Corporation, John Hancock Mutual Life Insurance Company, Interpleaded Defendants.

No. 90 Civ. 3862 (MBM).

United States District Court,
S.D. New York.

Oct. 21, 1991.

Donald MacNaughton, White & Case, New York City, for Bankers Trust.

Marvin E. Frankel, Kramer, Levin, Nessen, Kamin, Frankel, New York City, for General Elec. Railcar Services Corp.

Claudia Conway, Butler, Fitzgerald & Potter, New York City, for Brae Corp., Braecar, Inc. and Brae Transp., Inc.

W. Cullen MacDonald, Hawkins, Delafield & Wood, New York City, for Manufacturers Nat. Bank.

Lowell Johnston, New York City, for Ford Motor Credit Corp. & United States Rail Services, Inc.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Bankers Trust Company, as Security Trustee for holders of Equipment Trust Certificates used to finance the purchase of rail cars, sued defendant Manufacturers National Bank of Detroit ("MNB") for a declaration nullifying MNB's termination of a rail-car management agreement because MNB allegedly failed to provide proper notice to either Bankers Trust or the correct holders of the Equipment Trust Certificates. MNB is trustee of a trust

that owns the rail cars. MNB counterclaimed by serving an "Interpleader Complaint" against Bankers Trust and other "Interpleaded Defendants" for a declaration of all parties' "rights and other legal relations" with respect to the management agreement.

All interpleaded defendants except Ford Motor Credit Company ("Ford") and United States Rail Services, Inc. ("USRS"), seek dismissal on the ground that MNB's defensive interpleader is an improper use of both statutory interpleader, 28 U.S.C. § 1335, and Rule interpleader, Fed.R.Civ.P. 22. For the reasons set forth below, that motion is granted. However, after considering the parties' briefs and oral argument on the subject of whether joinder of certain additional parties might be proper, because MNB may face inconsistent liability concerning its obligations under the two separate, but related, trust agreements, and because Ford and USRS' absence may impair their ability to protect their interests in this action, MNB's complaint will be treated as a motion to join Ford and USRS as "Persons to be Joined if Feasible" under Fed.R.Civ.P. 19(a)(2) and, accordingly, Ford and USRS will be joined as defendants.

## I.

On June 10, 1988, Ford and Braecar, Inc. ("Braecar") entered into a complex joint venture for the acquisition, financing and management of a fleet of rail cars. The venture was accomplished by means of three interrelated agreements all executed on that date: two trust agreements—an "Owners Trust Agreement" and an "Equipment Trust Agreement," and a "Management Agreement."

Pursuant to the Owners Trust Agreement, MNB, as "Owner Trustee," held title to the rail cars for the benefit of Ford and Braecar. (Lowe Aff., Exh. A § 1.02) The Owners Trust Agreement provided that neither Ford nor Braecar could assign its interest in the Owners Trust without the consent of the other. (*Id.* § 6.01)

Under the Equipment Trust Agreement, MNB financed the Owner Trust's acquisition of the rail cars by borrowing the necessary funds from Bankers Trust, as Security Trustee for third party holders of "Equipment Trust Certificates." (Lowe Aff. ¶ 4)

The third agreement executed on June 10, 1980 was the Management Agreement between MNB and Brae Corporation ("Brae"), Braecar's parent. Under the Management Agreement, Brae, as "Manager," assumed nearly all daily responsibilities for the rail car fleet, including leasing the cars to users, maintaining the equipment, collecting rents, paying applicable taxes, and furnishing regular reports to MNB. (Lowe Aff. ¶ 6; *Id.*, Exh. C §§ 3, 6, 7, 8) The Manager receives its fee by retaining a portion of the rental collections before remitting the balance to MNB. (Lowe Aff. ¶ 7)

Although the Management Agreement does not expressly prohibit assignment, it does state that "any unauthorized assignment or transfer" constitutes an Event of Default entitling MNB to "terminate th[e] agreement." (Lowe Aff., Exh. C §§ 10(a)(iv), 10(c)) At the same time, however, the Equipment Trust Agreement prevents MNB from unilaterally terminating the Management Agreement. Section 5.02 of the Equipment Trust Agreement states that upon the occurrence of an "Event of Default" under the Management Agreement, the Owner Trustee—MNB—"will not terminate the Management Agreement unless it has given the Security Trustee and the Holders [of Trust Certificates] not less than 30 days' prior written notice of its intent to do so ... and neither the Security Trustee nor the holders of at least 60% of the unpaid principal amount of the Trust Certificates shall have reasonably objected to the proposed arrangement by written notice to the Owner Trustee prior to the proposed termination date." (Lowe Aff., Exh. B § 5.02) Therefore, although the Management Agreement allows MNB to terminate that agreement, the Equipment Trust Agreement forbids MNB from exercising that right unless it provides notice to all holders of Equipment Trust Certificates and receives the implied consent of both Bankers Trust and the holders of 60% of

the outstanding Equipment Trust Certificates.

Brae allegedly breached the Management Agreement in August 1989 by assigning its rights as manager to General Electric RailCar Services Corporation ("GERSCO") despite objections from Ford. On November 27, 1989, GERSCO advised Ford that, effective October 26, it had acquired all of Brae's and Braecar's rail car business, including the rights and duties conferred by the Management Agreement. Since October 26, 1989, GERSCO has been managing the rail cars, collecting rents, and deducting its management fees pursuant to the terms of the Management Agreement. (Lowe Aff. ¶ 11)

Ford interprets certain provisions of the Owners Trust Agreement to require MNB, as trustee of the Owners Trust, to follow Ford's instructions relating to the Management Agreement even if the other trust beneficiary, Braecar, does not agree with those instructions. On December 1, 1989, Ford instructed MNB to terminate the Management Agreement and enter into a new management agreement with Ford's own affiliate, USRS. (Lowe Aff., Exh. H) On December 5, 1989, MNB followed Ford's instructions by notifying Bankers Trust and all record holders of equipment trust certificates that it would terminate the Management Agreement, effective January 8, 1990, and enter into a new agreement with USRS. (*Id.*, Exh. I) On March 30, 1990, MNB and USRS entered into a new rail car management agreement. (*See* Answer, Counterclaim and Cross–Claims of Ford and USRS ¶ 38, Exh. 28)

Meanwhile, sometime prior to December 8, 1989, GERSCO acquired 78% of the unpaid principal amount of the Equipment Trust Certificates from two holders, Prudential Insurance Company of America and Aetna Life Insurance Company. Bankers Trust contends that GERSCO acquired this interest on November 30, 1989. (Complaint ¶ 20) Ford contends that GERSCO's ownership did not become effective until December 8, 1989. (Ford's Memorandum of Law at 7)

On January 17, 1990, GERSCO informed MNB that the December 5, 1989 notice of termination was ineffective because MNB never provided a copy of the notice to GERSCO and, in any event, as a holder of more than 60% of the unpaid principal amount of the Equipment Trust Certificates, it formally objected to termination. (*Id.*, Exh. J) As mentioned, § 5.02 of the Equipment Trust Agreement required MNB to notify all holders before terminating the Management Agreement and provided also that either Bankers Trust or a 60% holder could prevent termination by written objection prior to the proposed termination date.

On June 6, 1990, Bankers Trust commenced the present suit for a declaration nullifying MNB's termination because MNB failed to notify GERSCO on December 5, 1989 even though GERSCO had allegedly become a holder on November 30. Because Bankers Trust is a New York Bank with its principal place of business in New York and MNB is a national banking association with its principal place of business in Michigan, subject matter jurisdiction is based on diversity of citizenship. *See* 28 U.S.C. § 1348 (national banking associations are "deemed citizens of the States in which they are ... located").

On September 11, 1990, MNB answered the Bankers Trust complaint and "counterclaimed" for a judgment "declaring the rights and other legal relations of the parties including, but not limited to, the right, duty and power to manage the.... fleet of railcars." (Lowe Aff.Exh. O, Answer and Counterclaim, ¶ 32) That same day, MNB filed also the "interpleader complaint" which is the subject of this motion. In that pleading, MNB alleged the following as a basis for interpleader jurisdiction:

12. Each of the interpleaded defendants is, directly or indirectly, either claiming or may claim to be entitled to one or more of the benefits arising by virtue of an instrument and an obligation of [MNB], to wit: the right, duty and power to manage a fleet of railcars. Said claims are, within the meaning of 28 U.S.C. § 1335(b), adverse to and independent of one another. By reason of said claims, there exists an actual controversy

---

**306**

among the parties regarding the management of said fleet of railcars and the benefits to be derived therefrom. In addition, while [MNB] denies that it has any liability to Bankers Trust whatsoever, should it nonetheless be held liable, it has or may have rights to indemnity and contribution from each of the interpleaded defendants.

13. [MNB] seeks a judgment of this court declaring the rights and other legal relations of the parties including, but not limited to, the right, duty and power to manage the said fleet of railcars. [MNB] is ready and willing to deliver, and hereby tenders and commits to deliver, to this Court the said agreements and instruments governing the management of said fleet of railcars, Additionally, [MNB] is willing to post a bond in whatever amount the court requires.

(Lowe Aff., Exh. O, Interpleader Complaint, ¶¶ 12, 13)

On January 14, 1991, Ford and USRS answered the interpleader complaint and, with the all parties to this dispute now purportedly joined because of the interpleader, Ford asserted a counterclaim

against MNB, and both Ford and USRS asserted various cross-claims against the other interpleaded defendants. In particular, Ford has counterclaimed against MNB for a declaration that MNB has not taken all steps necessary to effect the termination of the Management Agreement and cross-claimed against the Brae entities and GERSCO for breach of contract and breach of fiduciary duty. (*See* Answer, Counterclaim and Cross–Claims of Ford and USRS, ¶¶ 45(a)(v), 46–49) Interpleaded defendants Bankers Trust, Brae, Brae Transportation, Inc. (Brae's successor), Braecar, John Hancock and GERSCO now move to dismiss the interpleader complaint on the ground that the asserted stake in this action—"the right, duty and power to manage a fleet of railcars"—is not the proper subject of either rule or statutory interpleader and, in any case, that MNB is not a stakeholder entitled to bring an interpleader action.

### II.

MNB asserts that its interpleader complaint arises under both 28 U.S.C. § 1335[1] and Fed.R.Civ.P. 22.[2] Because MNB's interpleader is not proper under either provision, that complaint must be dismissed.

---

1. The interpleader statute states:
   The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation ... having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery of payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if
   (1) Two or more adverse claimants, of diverse citizenship ... are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, or has given bond ... in such amount ... as the court ... may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of

the court with respect to the subject matter of the controversy.
28 U.S.C. § 1335.

2. Fed.R.Civ.P. 22 provides that:
   (1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provision of this rule supplements and do not in any way limit the joinder of parties permitted in Rule 20.
   (2) The remedy herein provided is in addition to and in no way supersedes or limits the remedies provided by [28 U.S.C. §§ 1335, 1397, and 2361]. Actions under those provisions shall be conducted in accordance with these rules.

■ An action under the interpleader statute "must be brought by the stakeholder, and despite the prospects of multiple suits a claimant not in possession or control of property cannot bring the action and thus force the stakeholder to interplead." 3A *Moore's Federal Practice* ¶ 22.07 at 22–47 (1991). *See, e.g., Ashton v. Josephine Bay Paul and C. Michael Paul Foundation, Inc.,* 918 F.2d 1065, 1068 (2d Cir.1990) (interpleader statute "provides *stakeholders* a method by which they can deposit a *stake* subject to adverse claims with the court so that ownership can be adjudicated and the *stakeholder* can avoid being subjected to inconsistent judgments in different fora.") (emphasis added); *General Atomic Co. v. Duke Power Co.,* 553 F.2d 53 (10th Cir.1977) (interpleader must be brought by party in possession of property subject to competing claims, statute was not intended to solve all problems of multiparty litigation).

The "right, duty and power to manage a fleet of railcars" is not, properly speaking, a stake under the interpleader statute, and even if it were MNB is not the stakeholder because the railcars are being managed by GERSCO. The stake requirement contemplates that there exist something analogous to a distinct fund or other thing of value subject to competing claims. In *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967), the Supreme Court emphasized that the interpleader statute's purpose was to permit an "orderly contest with respect to [a] fund," *id.* at 534, 87 S.Ct. at 1205, and not "to solve all the vexing problems of multiparty litigation arising out of a mass tort" or other complex dispute. *Id.* at 535, 87 S.Ct. at 1206. Although this case involves one aspect of a complex dispute involving multiple parties and multiple claims, statutory interpleader is an inappropriate means of concentrating the entire dispute because the purported stake is not analogous to a distinct fund or other thing of value.

■ Even if the "right, duty and power to manage a fleet of railcars" could constitute an interpleader stake, MNB would not be the proper party to bring the action. The action must be "filed by any person ... having in his ... custody or possession [the stake]." Although the parties contest whether GERSCO or USRS is legally entitled to manage the railcars, GERSCO currently exercises that right by virtue of Brae's assignment of its original "right, duty and power to manage a fleet of railcars." If any party may be said to have "custody or possession" of that purported stake, it is GERSCO. The heart of this dispute is the contention of Ford, USRS and MNB that GERSCO, not MNB, has *wrongful* "custody or possession" of the stake. MNB's complaint simply is not within the scope of statutory interpleader.

■ MNB contends also that its complaint is proper under Fed.R.Civ.P. 22. Although as Judge Weinfeld held, Rule 22 does not require a formal stake or fund, *Xerox Corp. v. Nashua Corporation,* 314 F.Supp. 1187, 1189 (S.D.N.Y.1970) (Weinfeld, J.), the situation in that case, in which the plaintiff was obliged to pay royalties to one of two competing patent holders, is completely different from the one here, in which the obligations under the Management Agreement run from the manager to MNB, not the other way around. The second sentence of Rule 22—"It is not ground for objection to the joinder that the claims of several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants"—suggests that the interpleader plaintiff must hold some right or obligation subject to "the claims of several claimants." In short, although Rule interpleader does not require a discrete "stake" or "fund," the threat of double or multiple liability must result from some single right or obligation which the interpleader plaintiff has in relation to one of the defendants. *Xerox,* 314 F.Supp. at 1189 ("[t]he action will lie where all that is involved is the threat of multiple liability on what is in fact but a single claim or obligation").

**308**

Here, MNB does not itself have any single obligation to only one of two competing claimants. Rather, MNB faces a situation in which it has inconsistent duties to separate parties under two separate, but related, agreements, and may have breached one agreement by complying with duties under the other. MNB's potential liability in this suit arises because MNB chose to comply with its supposed obligation to Ford under the Owners Trust Agreement to terminate the Management Agreement instead of complying with its separate obligation to Bankers Trust under the Equipment Trust Agreement to continue the Management Agreement. Instead of multiple liability on a single obligation, MNB actually faces multiple liability on multiple obligations. Because this situation does not come within the scope of rule interpleader, the interpleader complaint must be dismissed.

■ As an alternative ground for dismissing the interpleader complaint, I note that MNB failed to bring its interpleader complaint as a proper cross-claim or counterclaim against Bankers Trust. As mentioned, Bankers Trust originally sued MNB for a declaration that the latter's termination of the Management Agreement violated the Equipment Trust Agreement. MNB then "counterclaimed" for a declaration "declaring the rights and other legal relations of the *parties* including, but not limited to, the right, duty and power to manage the.... fleet of railcars." (emphasis added). The same day, MNB filed its interpleader complaint that is the subject of the present motion. In effect, MNB asserted its interpleader complaint against Bankers Trust by way of counterclaim and then joined other parties to that interpleader counterclaim pursuant to Fed.R.Civ.P. 20(a) (permissive joinder).

■ Both statutory and rule interpleader may be brought by way of cross-claim or counterclaim. Fed.R.Civ.P. 22(1); 22(2); *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 683 (2d Cir.1989). In this case, however, the interpleader complaint is not brought as part of a compulsory counterclaim against Bankers Trust, nor

for that matter pursuant to any counterclaim against Bankers Trust. MNB has not asserted any "claim" against an "opposing party" as those terms are used in Fed.R.Civ.P. 13(a) and 13(b). Although the facts which MNB asserts in its answer and interpleader complaint suggest possible claims against GERSCO or the Brae entities, they do not suggest a claim against Bankers Trust, the only "opposing party" at the time of the original complaint. Accordingly, even if the subject matter of MNB's interpleader complaint were otherwise proper, the complaint itself is not properly part of the suit originally filed by Bankers Trust. *See Grubbs v. General Electric Credit Corporation*, 405 U.S. 699, 705 n. 2, 92 S.Ct. 1344, 1349 n. 2, 31 L.Ed.2d 612 (1972) ("under Fed.R.Civ.P. 22, a defendant seeking interpleader must frame his pleading either as a cross-claim seeking relief against a co-party already in the lawsuit or as a counterclaim seeking relief against the plaintiff. If the defendant states a claim seeking relief against such a co-party or plaintiff-counter-defendant, he may seek to bring in additional parties under the joinder provisions of Rule 20. But the interpleader provided by Rule 22 must have some nexus with a party already in the case.").

For the reasons set forth above, the motion to dismiss MNB's interpleader complaint is granted. Because MNB's counterclaim presents no claim against Bankers Trust, but instead is brought solely to provide a purported basis for the interpleader complaint, the counterclaim is dismissed as well.

### III.

■ As noted, MNB's cannot use interpleader to join all parties involved in the rail car controversy to Bankers Trust's original action—an action which concerns only one aspect of the controversy: Did MNB breach its obligations under the Equipment Trust Agreement by terminating the Management Agreement without providing notice to GERSCO? Only a strained reading of the interpleader statute and Rule 22 would permit MNB to join, on

its own initiative, Ford and USRS' separate breach of contract and breach of fiduciary duty claims against GERSCO and the Brae entities to the original suit between Bankers Trust and MNB.

One aspect of this controversy, however, may cause MNB to suffer inconsistent liability. On one hand, this court may construe the Equipment Trust Agreement as *forbidding* MNB from terminating the Management Agreement because of improper notice to GERSCO. On the other hand, Ford could bring a separate suit before a separate court that results in a judgment construing the Owners Trust Agreement as *requiring* MNB to terminate that same Management Agreement because of Braecar's improper assignment.of its rights to GERSCO. For purposes of judicial economy, it is logical that the Equipment Trust Agreement and the Owners Trust Agreement be construed together in a single action binding on all parties who could potentially subject MNB to this inconsistent liability. Furthermore, because both agreements were executed together as essential parts of the same basic transaction, it is not unfair to construe them together and bind all properly joined parties to the construction. This is simply an application of the familiar contract principle that multiple documents constituting part of a single transaction must be interpreted as one agreement. *Gordon v. Vincent Youmans, Inc.,* 358 F.2d 261, 263 (2d Cir.1965); *Nau v. Vulcan Rail & Construction Co.,* 286 N.Y. 188, 197, 36 N.E.2d 106, 110 (1941). Essentially, the threat of "inconsistent obligations" arises from a possible inconsistency concerning MNB's duties as those duties arise from within a set of transactionally interrelated documents—the Owners Trust Agreement and the Equipment Trust Agreement.

Therefore, MNB's interpleader complaint will be treated as a motion to join Ford and USRS as "Persons to be Joined if Feasible" under Fed.R.Civ.P. 19(a)(2), which provides for the joinder of persons who:

"claim an interest relating to the subject of the action and who [are] so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party."

Ford is a "Person to be joined if Feasible" within the meaning of Fed.R.Civ.P. 19(a)(2)(ii) because MNB's alleged breach of the Equipment Management Agreement is a result of MNB's compliance with its inconsistent duty to Ford under the Owners Trust Agreement. *See Kalinsky v. Long Island Lighting Co.,* 484 F.Supp. 176, 180 (E.D.N.Y.1980) (New York Public Service Commission is necessary party in suit brought by resident against utility claiming exemption from rate structure mandated by Commission). Ford's purported right to order MNB to terminate the Management Agreement and enter into a new management agreement with its own affiliate, USRS, makes it a party "claim[ing] an interest relating to the subject of the [existing] action." Furthermore, Ford's absence may subject MNB to "inconsistent obligations" with respect to its duties concerning the termination of the original Management Agreement.

Although a trust beneficiary such as Ford can be bound by a judgment against a trustee such as MNB, *see Pelfresne v. Village of Williams Bay,* 865 F.2d 877, 881 (7th Cir.1989) ("a trust beneficiary is collaterally estopped by a previous adjudication for or against a trustee, so long as the trustee and beneficiary did not have adverse interests in the conduct of the prior litigation and the trustee was authorized to prosecute and defend litigation on behalf or the trust"), the present action is not against MNB in its capacity as trustee of the Owners Trust, whatever MNB's designation in the caption. Rather, MNB, which happens to be Ford's trustee under the Owners Trust Agreement, is being sued for breaching its contractual obligations to Bankers Trust under the Equipment Trust Agreement. Therefore, Ford should be

joined in order to be bound by any judgment rendered here. Moreover, even if it is possible that Ford would be bound by collateral estoppel, such an estoppel itself would have to be established in a later action where the facts underlying Ford's relationship to MNB's prosecution of this case would have to be litigated. That is hardly an economical result.

■ In addition to being a necessary party under Fed.R.Civ.P. 19(a)(2)(ii), Ford is also a necessary party under Fed.R.Civ.P. 19(a)(2)(i) because "disposition of the action in [Ford's] absence may as a practical matter impair or impede [its] ability to protect" its interest in the subject matter of the action—the management of the rail cars. As trustee of the Owners Trust, MNB has duties which run to both Ford and Braecar as beneficiaries of that trust. However, in following Ford's instructions to terminate the Management Agreement, MNB may have breached its duties to Braecar. Because MNB faces a potential conflict of interest in its duties to the two trust beneficiaries, there is a possibility that MNB will not be able to defend Ford's interests zealously in the present action. Therefore, Ford should be joined in order to ensure that its interests are not impaired by that conflict. *See Crouse–Hinds Co. v. Internorth, Inc.*, 634 F.2d 690, 692 (2d Cir.1980) (where defendant counterclaimed to enjoin plaintiff from merging with third party, joinder of third party was necessary because its "rights would clearly be prejudiced if the relief sought was granted"). For the same reasons Ford should be joined under Fed.R.Civ.P. 19(a)(2)(i), USRS also should be joined. As purported successor manager, USRS "claims an interest relating to the subject of the action" that may be impeded or impaired in its absence because MNB is a trustee to both Ford and Braecar. Therefore, USRS also will be joined.

■ Because the interests of Ford and USRS are directly adverse to Bankers Trust's interest in nullifying MNB's termi-

nation of the Management Agreement, Ford and USRS should be joined as defendants to the original action. *See* 3A *Moore's Federal Practice, supra,* ¶ 19.03 at 19–50 (to determine whether diversity of citizenship exists, "alignment [must] conform to the real interests of the parties"). Accordingly, Ford and USRS will be joined as defendants.[3]

I express no opinion on whether MNB can implead or otherwise join any additional parties to the action in the event Ford seeks, by way of cross-claim, a declaration concerning whether MNB has taken all steps necessary to terminate the Management Agreement—as it did in its counterclaim to the interpleader complaint—or whether any other parties can intervene in this action pursuant to Fed.R.Civ.P. 24. If Ford does assert a cross-claim against MNB, and MNB then impleads other parties, subject matter jurisdiction will exist under traditional principles of ancillary jurisdiction notwithstanding the addition of parties who are not diverse with respect to Ford, USRS or MNB. *Associated Dry Goods Corp. v. Towers Financial Corp.,* 920 F.2d 1121, 1125–26 (2d Cir.1990) (ancillary jurisdiction exists over non-diverse party joined with original plaintiff as defendant to compulsory counterclaim brought by original defendant); *Huberman v. Duane Fellows, Inc.,* 725 F.Supp. 204, 207 (S.D.N.Y.1989) (ancillary jurisdiction exists over third-party defendant who was not of diverse citizenship from third-party plaintiff).

The end result of Ford's joinder might be the additional joinder of some of the parties just dismissed from the action. However, their joinder must be in accordance with the federal rules and not a tortured reading of the interpleader provisions.

For the above reasons, the motion to dismiss MNB's defensive interpleader complaint is granted. However, Ford and USRS may be joined as defendants. Amended pleadings are to be filed by November 15, 1991; responsive pleadings by

---

**3.** Because Ford is a Delaware Corporation with its principal place of business in Michigan, and USRS is a California Corporation with its princi-

pal place of business in California, their joinder as defendants will not defeat diversity of citizenship.

November 29, 1991; and proposed additional pleadings, and motions if necessary, will be filed by December 13, 1991.

SO ORDERED: