**NEWAY ANCHORLOK INTERNA-
TIONAL, INC., a Delaware
Corporation, Plaintiff,**

v.

**LONGWOOD INDUSTRIES, INC., a
New Jersey Corporation, Longwood
Elastomers, Inc., a Virginia Corpora-
tion, Polymer Development, L.L.C., a
North Carolina limited liability com-
pany, and Nelson Teed, an individual,
Defendants.**

No. 1:99CV225.

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 8, 1999.

R. Terrance Rader, Rader, Fishman & Grauer PLLC, Bloomfield Hills, MI, Joel E. Bair, G. Thomas Williams, Rader, Fishman & Grauer, PLLC, Grand Rapids, for Neway Anchorlok International, a Delaware corporation, plaintiff.

Daniel R. Gravelyn, Warner, Norcross & Judd LLP, Grand Rapids, MI, Jonathan A. Berkelhammer, Andrew S. Chamberlin, Shannon R. Joseph, Smith, Helms, Mulliss & Moore, LLP, Greensboro, NC, Matthew W. Sawchak, Smith, Helms, Mulliss & Moore, LLP, Raleigh, NC, Thomas Alan Kuiper, Wheeler Upham, PC, Grand Rapids, MI, for Longwood Industries, Inc., a New Jersey corporation, Longwood Elastomers, Inc., a Virginia corporation, Polymer Development, L.L.C., a North Carolina limited liability company, Nelson Teed, an individual, defendants.

## OPINION

ENSLEN, Chief Judge.

Defendants have moved to dismiss the Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons which follow, the motion is granted.

### ALLEGATIONS

Plaintiff Neway Anchorlok, International has brought its Amended Complaint in this Court alleging five counts for relief against Defendants Longwood Industries, Inc., Longwood Elastomers, Inc., Polymer Development, L.L.C., and Nelson Teed. The five counts are premised on the antitrust laws of the United States of America, and specifically 15 U.S.C. §§ 1, 2, and 15, as well as the interpleader statute (28 U.S.C. § 1335) and the declaratory judgment statute (28 U.S.C. § 2201).

According to the Amended Complaint, Plaintiff invented the air-operated diaphragm spring brake actuator for use in commercial vehicles about 1960. (Amended Complaint at ¶¶ 9–10.) According to the allegations, while some diaphragms for spring brakes are manufactured from neoprene, Plaintiff has pioneered the use of rubber to manufacture the diaphragms. (Id. at ¶¶ 9–11.) In 1995, Plaintiff terminated its relationship with its supplier of the diaphragms, Accurate Products, Inc., and has ordered diaphragms from foreign manufacturers and Defendants Longwood Industries, Inc. and Longwood Elastomers, Inc. (the "Longwood Defendants") since January 1996. (Id. at ¶ 13.)

Due to the high cost of the diaphragms, Plaintiff has contemplated manufacture of the diaphragms in-house. (Id. at ¶ 14.) In about June 1997, Plaintiff was approached by Nelson Teed of Polymer Development. Teed proposed a joint business relationship with Plaintiff for the manufacture of diaphragms through a confidential process. (Id. at ¶ 15.) The proposal resulted in agreement between Teed and Plaintiff to manufacture diaphragms in-house for Plaintiff. (Id. at ¶ 16.) The Longwood Defendants as the former employer of Nelson Teed obtained a temporary restraining order and preliminary injunction from the Superior Court of Guilford County, North Carolina to prevent Nelson Teed from using the Longwood Defendants' trade secrets. (Id. at ¶¶ 19–21.) On April 1, 1999, the North Carolina court issued a second preliminary injunction prohibiting Teed from providing any information relating to rubber brake diaphragms to Plaintiff. (Id. at ¶ 24.)

According to Plaintiff, the Longwood Defendants have advised that they will seek to prevent through litigation Plaintiff's manufacture of its own diaphragms. (Id. at ¶ 26.) According to Plaintiff, the Longwood Defendants have threatened to discontinue supply unless Plaintiff agrees to an exclusive contract with the Longwood Defendants. (Id. at ¶ 27.) Accord-

ing to Plaintiff, the Longwood Defendants have offered a price reduction to Plaintiff conditioned on the payment of at least $500,000 of expenses in the North Carolina lawsuit. (*Id.* at ¶ 28.)

Plaintiff construes these allegations as creating liability as to five counts: Count One for monopolization in violation of 15 U.S.C. § 2; Count Two for attempted monopolization in violation of 15 U.S.C. § 2; Count Three for a restraint of trade by exclusive dealing in violation of 15 U.S.C. § 1; Count Four for interpleader—to determine as between the competing parties the ownership of the confidential information in the possession of Plaintiff; and Count Five to declare the rights of the competing parties as to the proprietary information. In particular, the interpleader count alleges that the Longwood Defendants maintain that proprietary information for the manufacture of rubber diaphragms claimed by Teed and Anchorlok is the property of the Longwood Defendants, that the property's value is in excess of $500 and that without a judicial determination of ownership the property may be lost and the parties damaged irreparably. (*Id.* at ¶¶ 44–51.)

## STANDARD FOR DISMISSAL

The Longwood Defendants have moved jointly to dismiss the whole of this action for failure to state a claim for which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The allegations of the complaint must be construed in the favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The rules generally require only a "short and plain statement of the claim"

and not detailed allegations. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Nevertheless, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988) (quotations omitted.) The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987).

## LEGAL ANALYSIS

### a. Litigation and Threats of Litigation

Plaintiff's various antitrust claims against Defendants pertain in large part to the antitrust litigation pending between the Longwood Defendants and Teed in North Carolina and the litigation threatened against Plaintiff by the Longwood Defendants. Under the Noerr–Pennington doctrine, the petitioning of the federal and state court systems for redress of grievances is an act immune from antitrust liability absent a sham suit. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 512, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). To establish the sham exception, it must be alleged and proven that the lawsuit is objectively baseless in that no reasonable litigant could expect success on the merits and the lawsuit must conceal an attempt to interfere directly with the business relations of a competitor. *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.* 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993).

In this case, there are no allegations sufficient to establish an inference that the North Carolina lawsuit is objectively baseless. In response to argument on this issue, Plaintiff argues that the conduct at issue is the Longwood Defendants' threat of litigation—which Plaintiff argues

does not require an allegation that the threatened litigation is objectively baseless and instituted for an improper purpose. Federal courts have held that "threats of litigation" as the usual precursor to a lawsuit are likewise protected by the Noerr–Pennington doctrine. *Cardtoons, L.C. v. Major League Baseball Players Assoc.*, 182 F.3d 1132 (10th Cir.1999); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1558–60 (11th Cir.1992); *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir.1983). Furthermore, the Tenth Circuit Court of Appeals has recently said in the *Cardtoons* case that in the case of threatened litigation a plaintiff must plead and prove the baselessness of the threatened litigation consistent with the standards announced in *Columbia Pictures. Cardtoons*, 182 F.3d 1132, 1133. In light of such holding and there being no allegations in the Amended Complaint from which one could legitimately infer that the threatened litigation was "objectively baseless," the anti-trust claims arising from the Plaintiffs' allegations of litigation and threatened litigation fail to state claims under Rule 12.

### b. Proposed Action by the Longwood Defendants

 The Longwood Defendants also urge dismissal of Plaintiff's remaining anti-trust claims premised on Defendants' proposals. It is apparent from the allegations that Plaintiff has never agreed to these proposals such that there is no actionable contract, combination or conspiracy within the meaning of Section 1 of the Sherman Act. *See Barnosky Oils, Inc. v. Union Oil Co.*, 665 F.2d 74, 77 (6th Cir.1981). Furthermore, there is no allegation (as required for liability under 15 U.S.C. § 15 for any Section 1 or Section 2 claim) that the Plaintiff has been unable to purchase product from the Longwood Defendants because of such "proposals." Accordingly, the allegations do not support the required

inference that Plaintiff has suffered an antitrust injury because of the Longwood Defendants' conduct. *See Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 917 F.2d 1413, 1439 (6th Cir.1990). As such, the Court determines that Plaintiff's other anti-trust allegations fail to state a claim under Rule 12.

### c. Claims for Interpleader and Declaratory Judgment

 Plaintiff has requested other declaratory and injunctive relief (in Counts Four and Five) which if granted would affect the progress of the North Carolina lawsuit. Defendant urges that this relief is barred by the Anti–Injunction Act, 28 U.S.C. § 2283, which prohibits federal courts from enjoining state court proceedings unless the injunction falls within one of three statutory exceptions. *Mitchum v. Foster*, 407 U.S. 225, 228–229, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). The Anti–Injunction Act bars not only injunctions but also declaratory relief which would have the effect of enjoining state court action. *See Travelers Ins. v. Louisiana Farm Bureau Federation*, 996 F.2d 774, 776 (5th Cir.1993) (disapproving of declaratory relief if an "end-run" to evade the Act); *Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 504–508 (5th Cir. 1988) (*en banc*) (same).

 In response to the Longwood Defendants' arguments, Plaintiff notes that an interpleader action under 28 U.S.C. § 1335 is explicitly allowed by 28 U.S.C. § 2361 to result in the injunction of state court proceedings.[1] Thus, a proper interpleader action falls within the statutory exception under the Anti–Injunction Act for an injunction "expressly authorized by Act of Congress." *See Mitchum v. Foster*, 407 U.S. 225, 234, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) (recognizing that Section 1335 interpleader injunction of state court proceedings is explicitly authorized by Congress); *Vendo Co. v. Lektro–Vend*

---

1. No exception is made by Act of Congress for a Rule 22 interpleader action, however. See

*United States Industries, Inc. v. Laborde*, 794 F.Supp. 454, 459 (D.P.R.1992).

*Corp.,* 433 U.S. 623, 640, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977) (same). With this in mind, the parties now dispute whether the allegations sufficiently state an interpleader action under 28 U.S.C. § 1335.

Title 28 U.S.C. § 1335 provides that:

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

As is clear from the statutory language, statutory interpleader is a procedure whereby a stakeholder deposits tangible property or money (valued at least $500) with the court for the purpose of determining claims of two or more adverse claimants of diverse citizenship. The action requires the deposit of the fund or property with the court registry. Plaintiff has failed to deposit property with the Court but asks to post a bond or to deposit confidential papers containing its trade secrets.

It is axiomatic to the statutory interpleader procedure that "there exist something analogous to a distinct fund or other thing of value subject to competing claims." *Bankers Trust Co. v. Manufacturers National Bank of Detroit,* 139 F.R.D. 302, 307 (S.D.N.Y.1991). For this reason, the procedure does not apply to the division of "amorphous" property such an inchoate right to funds or a right to manage railcars. *Bankers Trust Co.,* 139 F.R.D. at 306 (holding that right to manage railcars is not "identifiable" property); *Murphy v. Travelers Ins. Co.,* 534 F.2d 1155, 1159 (5th Cir.1976) (discussing inchoate rights); *see also* 7 Charles A. Wright & Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1704 at 506–507 (1986 & 1996 supp.) (discussing identifiable property requirement).

In this case, the objective of the interpleader statute cannot be accomplished because there is no readily "identifiable property" the award of which will resolve the controversy. While the Court could award a right to papers containing trade secrets to one of the parties, this would not settle the controversy because the parties would continue to dispute whether products and processes utilized by Plaintiff were derived from the trade secrets of the Longwood Defendants regardless of whom received the papers. This suit, far from avoiding unnecessary litigation, is unnecessary litigation given that the question of the ownership of the confidential trade secrets is already pending

before the North Carolina state court and may be resolved in that forum.

Accordingly, the Court dismisses Counts Four and Five under Rule 12 for failure to state a claim for which relief may be granted.

## CONCLUSION

In accordance with the Court's Opinion, judgment shall issue dismissing all claims brought pursuant to Federal Rule of Civil Procedure 12.

## JUDGMENT

In accordance with the Court's Opinion of this date;

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Dkt. No. 12) is **GRANTED** and that all claims contained in this action are **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(6) due to failure to state a claim for which relief may be granted.